WADE v. LUTCHER & MOORE CYPRESS LUMBER CO., Limited.[1]

(Circuit Court of Appeals, Fifth Circuit.   February 17, 1896.)

No. 434.

1. CARRIERS—PRIVATE AND COMMON.

   The responsibility and duties of a private carrier, operating a railroad for the purposes of its own business, and permitting persons to travel gratuitously on such road, are different from those of common carriers for hire; and, in an action against such a private carrier for damages caused by its alleged negligence, it is not error to refuse instructions to the jury based upon the rules as to the liability of common carriers.

2. SAME—WHO ARE COMMON CARRIERS—LOUISIANA CONSTITUTION.

   Article 244 of the constitution of Louisiana, providing that all railroads are public highways, and all railroad companies common carriers, does not have the effect of making a business corporation organized to construct and operate a sawmill and a railroad in connection therewith, which constructs a logging railroad on its private grounds, and operates the same for private purposes, a common carrier, charged with the duties and responsibilities imposed by law on such carriers.

In Error to the Circuit Court of the United States for the Eastern District of Louisiana.

B. R. Forman and J. T. Whitaker, for plaintiff in error.

G. L. Hall, for defendant in error.

Before PARDEE and McCORMICK, Circuit Judges, and BOARMAN, District Judge.

PARDEE, Circuit Judge.   The plaintiff in error, Mrs. Margaret A. Wade, a widow, brought suit in the circuit court against the Lutcher & Moore Cypress Lumber Company, Limited, a corporation created under the laws of the state of Louisiana, to recover damages for the death of her son, claiming the sum of $30,000.   In her petition she alleged:   That the Lutcher & Moore Cypress Lumber Company, Limited, owns and operates a railroad in the parish of St. James, La., from Lutcher, a village on the river in St. James parish, and on the line of the Mississippi Valley Railroad, with which said railroad of the Lutcher & Moore Cypress Lumber Company, Limited, connects,

[1] Rehearing denied April 21, 1896.

to Blind river, and said corporation built and conducted said railroad from Lutcher to Blind river, and owned and operated it on the 25th of June, 1894, and before and since. The public were in the habit of traveling on the trains hauling logs and timber and lumber on said railroad, to the knowledge of the officers and managers and vice principals of said company, and the mechanics and workmen employed by said company also were in the habit of traveling on said trains hauling logs, timber, and lumber, to the knowledge and with the consent of the officers, managers, and vice principals of said company. "On about the 25th June, 1894, Hampton Wade, a son of your petitioner (issue of her marriage with Dr. Henry F. Wade, deceased), was a blacksmith in the employment of said company; was lawfully traveling on the car in the train of defendant company, to which he was expressly or impliedly invited by the officers, agents, and managers and vice principals of said company; and, being so lawfully carried upon the train of said company, he was a passenger, and entitled to a safe road and safe carriage." The road was unskillfully and negligently constructed. The cross-ties were rotten, the rails uneven and crooked, and in a grossly defective condition, and dangerous. The locomotive engine was a very old, second-hand, rattle-trap affair, in bad order and repair, and its trucks, wheels, and flanges in bad order, and too light for the work in which it was employed. The weight of the logs, when being carried at any speed, was, by their momentum, apt, in turning a curve, to throw so light and defective an engine off so defective a track. That the engineer was notoriously careless, and addicted to drink, to the knowledge of the defendant company, its officers and agents, and vice principals and managers. The said engineer grossly neglected his duty, and abandoned his post, and left the running of the engine and train of cars to an ignorant, unskillful, incompetent negro fireman, the said engineer and fireman being the agents and employés and servants of said company in running said train, when the said train, in which petitioner's son, Hampton Wade, was being lawfully carried, considering the character of the cars, the bad locomotive, the track, and engine, was being run at a highly dangerous rate of speed, and was derailed, and said Hampton Wade was crushed and mangled, and, after suffering great agony of body and mind, died. At the time of the injury which caused his death he was exercising due care, and was without fault or negligence on his part, and his injury and death were caused by the negligence and carelessness and fault of the defendant company, its agents, servants, and employés, and it could have prevented said injury, and did not do so. The petition contained other suitable allegations tending to show a right to recover the damages claimed. The Lutcher & Moore Cypress Lumber Company, Limited, answered by a general denial, specially charging contributory negligence, and that the defendant company did not operate, or control the operation of, said railroad or train mentioned in plaintiff's petition, on June 25, 1894, or any of the employés, agents, or servants employed by it, on said day, or long prior or subsequent thereto.

The undisputed evidence in the case is to the effect: That the Lutcher & Moore Cypress Lumber Company, Limited, is a business

corporation created under Act 36, Laws La. 1888, for the following purposes:

"To manufacture lumber, shingles and other articles of wood, and in connection therewith, to establish, maintain and operate one or more saw, planing, shingle, pulp and lath mills, and a box, sash, door and blind manufactory, and also in connection therewith to erect, maintain and operate a railroad, tramways and other devices necessary for the purpose of said business; and to do a general manufacturing business, and for said purposes to purchase, sell, lease, have and hold real estate, machinery, and all other things necessary to be used and employed in said business."

—That, in line with its declared purposes, the said company established, built, and operated a logging railroad, to be used in connection with a sawmill, for the purpose of bringing logs from the lands of the company to the said mill; and after operating the said railroad for some time, say up to the month of November, 1893, the said company made a verbal lease to the firm of Baptiste & Sons, with whom there was a contract to cut logs in the swamps belonging to the company, and deliver them at the sawmill, under which verbal lease the entire railroad, including engines and cars, was turned over to be operated, and was thereafter operated, by Baptiste & Sons, under their sole direction and control. That, while said railroad was operated by Baptiste & Sons, their employés and other persons traveling between the river and the swamp traveled on said railroad without charge, although it is undisputed that about two months prior to the accident in which Hampton Wade was killed the firm of Baptiste & Sons instructed the engineer who had charge of the locomotive and train running on said road not to allow people to ride on that train unless they were employés of Baptiste & Sons, employed in running the road. That Hampton Wade was a blacksmith employed by Baptiste & Sons, but not for the purpose of running and operating the railroad. That Hampton Wade was killed by the derailment of a train upon which he was riding at the time with some other persons, employés of Baptiste & Sons. There was evidence tending to show that at the time of the accident the railroad track, engines, and cars, were in bad order, and that the train was being run at a very high rate of speed; the general tendency of the case showing that the derailment was probably caused by bad track, dilapidated engines, and high speed combined. There was no evidence tending to show the condition of the track, cars, and engines at the time Baptiste & Sons took possession. There was evidence tending to show that at the time of the accident the engineer had left his engine in charge of a fireman, and, in company with Hampton Wade, was occupying a dangerous position upon the tool car, which car was shown to contain a tank of water and a box of tools and a bench, and on which persons were accustomed to ride when using the road. Other matters were shown by the evidence, not necessary to set forth. The trial resulted in a verdict for the Lutcher & Moore Cypress Lumber Company, Limited, and Mrs. Wade prosecutes this writ of error.

The first error assigned is that the court refused to charge the jury as follows:

"If the jury believe that the defendant was incorporated to erect, maintain, and operate a railroad, tramways, and other devices necessary for the purposes of its business, and it did build and own the road in question, from Lutcher to Blind river; and if the jury believe that the said railroad was unskillfully and negligently constructed, the rails uneven and crooked and in a grossly defective condition, and dangerous, the locomotive owned and furnished by the defendant was a very old, second-hand affair, in bad order and repair, its truck, wheels, and flanges in bad. order, and too light for the work in which it was employed, and by reason thereof the train on which Hampton Wade was traveling was derailed, and he was killed; and the jury believe that Baptiste & Sons, the logging firm, were not organized for the purpose of operating a railway, and were, under the evidence, the agents and employés of defendant, cutting defendant's logs from defendant's lands, and hauling them to the mill of defendant, and, to defendant's knowledge, the workmen of defendant and the workmen of Baptiste & Sons, and others, were in the habit of traveling on the said road at the time he was killed,—then the defendant is liable, and your verdict will be for the plaintiff."

Counsel for plaintiff in error relies upon the proposition that "gratuitous passengers are entitled to safe carriage, and can recover damages for injuries sustained through the negligence of those operating the train of a railway." The whole line of his argument on this point is to the effect that this logging railway, made and operated for private purposes, is charged with all the responsibilities of a public carrier of passengers. The charge requested assumes that the defendant was incorporated to erect, maintain, and operate a railroad, and if it built a railroad, and the plaintiff's decedent was lawfully traveling thereon at the time he was killed, then the defendant would be liable. It ignores the undisputed fact in the case that Baptiste & Sons were independent contractors, operating a private business and. railroad for their own purposes, and assumes that their lack of organization (whatever is meant by the term in this connection) for the purpose of operating a railway cuts some figure in the case. As we view the charge, it was clearly calculated to mislead the jury in these respects, and particularly as to the difference in responsibilities and duties between public carriers of passengers for hire, and private carriers permitting gratuitous travel on their roads and vehicles.

The second assignment of error is that the court erred in the following paragraph of the charge given to the jury, to wit:

"That under the uncontradicted facts in this case, and under the proof made by the plaintiff herself, that this road was not a public carrier, either under the constitution of this state, or any other law. It is a private railroad, built; as shown by the plaintiff herself, upon the private lands of this defendant company, for its own private purposes and business in connection with its sawmilling operations. I again repeat to you that it is not a public carrier, and therefore the law which applies to the obligations and duties of public carriers does not bear upon the case which is now presented for your consideration."

The learned counsel for the plaintiff in error contends that by article 46 of the constitution of Louisiana the creation of corporations by special or local laws is prohibited, and that by article 244 of the same constitution all railroads, public highways, and railroad companies are declared common carriers, so that "when the Lutcher & Moore Cypress Lumber Company, Limited, was incorporated for the purpose, inter alia, of constructing and operating a railroad, and

it did construct a railroad, its road thereby became a public highway, and it became a common carrier." The Lutcher & Moore Cypress Lumber Company, Limited, was created a corporation under a general act of the state of Louisiana providing for the creation of corporations to carry on lawful business or enterprises not otherwise provided for by, and not inconsistent with, the laws of the state. The law provides that any number of persons, not less than three, upon complying with the provisions of the laws of the state governing corporations in general, may form themselves into and constitute a corporation for such business purposes, and that to the name of every corporation created shall be attached the word "Limited," which word is to appear in all its signs, correspondence, and business papers, etc.; in other words, providing for the incorporation of business and trading firms in the similitude of limited partnerships. Stockjobbing was alone prohibited. The general laws of the state then in force authorized the organization of corporations for works of public improvement and public utility, and by them it was provided that any number of persons, not less than six, on complying with certain provisions, might form themselves into and constitute a corporation for the purpose of construction, working, and maintenance of railroads, canals, plank roads, bridges, ferries, and other works of public improvement, whether within or without the limits of the state, and for other purposes not necessary to name. But for the earnestness with which the argument was presented in this court, we would not suppose that the learned counsel would seriously contend that article 244 of the state constitution, dealing with corporations of public improvement and public utility, was intended to, or could be so construed as to, make out of a logging railroad appurtenant to a sawmill, constructed wholly on private grounds, and operated for private purposes, a common carrier charged with all the duties and responsibilities incumbent by the laws of the land upon common carriers, and simply because it is a railroad, and the owners are incorporated as a business corporation. It seems to us, we might as well hold that a railroad on a sugar plantation, appurtenant to the sugar mill, and used for carrying cane thereto, should be declared a common carrier. The supreme court of the state of Louisiana, while not squarely deciding the matter in hand, has decided that a corporation organized to carry freight and passengers between two sugar plantations about five miles distant from one another, and which, it was charged, was not a corporation organized for public purposes, but was a combination of individuals, whose sole object was to foster the private ends of two certain persons named, who owned jointly two sugar plantations, and who wished to transport the sugar cane grown on one of the plantations to the refinery situated on the other, was not, ex necessitate, such a corporation for public improvement as would authorize the expropriation of private property for its purposes. Williams v. Judge of Eighteenth Judicial Dist. Court, 45 La. Ann. 1295, 14 South. 57. The proposition that an individual or corporation may build a railroad wholly on his own land, for his own business, without making the same a common carrier, we do not doubt. We think it equally clear that there is a

decided line of demarkation as to responsibility between common carriers carrying for hire, and the obligations and duties devolving upon a private carrier carrying occasional passengers gratuitously. See Hutch. Carr. § 57 et seq.

The plaintiff in error complains of other portions of the judge's charge to the jury, but we do not consider the exceptions well taken, or necessary to be considered in detail. Although the trial judge recognized the force of the evidence showing the lease to Baptiste & Sons of the railroad, and its operation by them at the time Hampton Wade was killed, and accordingly substantially instructed the jury that the Lutcher & Moore Cypress Lumber Company, Limited, could not be held liable for any negligence in the actual operation of the road at the time Hampton Wade was killed, yet the judge appears to have entertained the opinion that as the Lutcher & Moore Cypress Lumber Company, Limited, was the actual owner of the railroad and appurtenances alleged to have been in bad order and condition, and contributing to the injury to Wade, the case might go to the jury on that phase of the case. If the undisputed facts permitted any recovery whatever against the Lutcher & Moore Cypress Lumber Company, Limited, then we are of opinion that the instructions given by the judge to the jury, and complained of by the plaintiff in error, were, in the main, correct expositions of the law applicable to the case; and we are also of opinion that, if the said instructions were in any respect erroneous, the errors were not prejudicial to the plaintiff in error. The verdict rendered by the jury appears to be the only one warranted by the pleadings and evidence, and it ought not to be disturbed. Judgment affirmed.