LOUIS SCHILLING v. WINONA & ST. PETER RAILROAD COMPANY.[1]

November 20, 1896.

Nos. 10,090—(11).

#### Carrier—Passenger in Freight Car—Risks Assumed.

*Held,* following Oviatt v. Dakota C. R. Co., 43 Minn. 300, that, when a passenger voluntarily takes passage in a freight car in a freight train, he assumes all risks and inconveniences reasonably and necessarily incident to that method of transportation. In such case the carrier has a right to discharge the duty imposed by law upon it as to the safety of the passenger with reference to the nature and purposes of the particular car and train so selected, but it is bound to exercise the highest degree of care for the safety of the passenger consistent with the practical operation of such train.

#### Same—Verdict not Sustained.

Rule applied, and *held* that the verdict in this case for the plaintiff was not sustained by the evidence, and that the judgment of the trial court for the defendant notwithstanding the verdict is correct.

Appeal by plaintiff from a judgment of the district court for Brown county, in favor of defendant, entered in pursuance of the order of Webber, J. Affirmed.

*Jos. A. Eckstein* and *John Lind,* for appellant.
*Brown & Abbott,* for respondent.

START, C. J. This is a personal injury case, in which the plaintiff had a verdict for the sum of $2,055. The trial court vacated the verdict, and ordered judgment for the defendant, pursuant to the provisions of Laws 1895, c. 320, and the plaintiff appealed from the judgment so entered.

The complaint alleged, with other matters, that on October 21, 1893, he was a passenger on one of the cars of the defendant, which is a carrier of passengers, to be conveyed from New Ulm to Springfield; that the car was so constructed that it could be entered or left only by a side door, 50 inches from the ground; that the defendant, then knowing that the car was filled with passengers of both sexes, and that it was not equipped with any closet or urinal, negligently

1 Reported in 68 N. W. 1083.

permitted the car to stand in its yard at Sleepy Eye for more than 30 minutes, at a point away from any platform, and negligently failed to provide any steps, platform, or other means to enable passengers to alight from the car during the time it was so standing in its yard, or to have a servant there to assist them in so alighting; that, while the plaintiff was so waiting, it was necessary for him to leave the car, to answer a call of nature, and while he was attempting so to do he slipped and fell to the ground, dislocating his hip joint, by reason of the defendant's negligence, so alleged. The answer denied any negligence on the part of the defendant, and alleged that the car in which the plaintiff was riding was a freight car, not intended for passengers, which he voluntarily elected to ride in, and that he knowingly assumed the risk and inconveniences incident thereto; and that he was guilty of contributory negligence.

There is practically no dispute as to the facts proven on the trial, and they are, so far as here material, substantially as follows: The plaintiff was one of a party of excursionists (some 38 in all), who, holding round-trip tickets, took passage at New Ulm for Springfield, a station 30 miles west of New Ulm, on one of the defendant's freight trains, scheduled to carry passengers. It was a way freight,—that is, it received and unloaded way freight in less than car loads at all the stations,—and, from the nature of its business, was subject to delays and unable to keep upon any scheduled time. The duration of its stop at any particular station was regulated by the exigencies of its business,—the amount of freight to be discharged and received. At the time in question the defendant also operated from New Ulm, westward, a regular passenger train, stopping at all stations, which was scheduled to leave New Ulm about 4 o'clock in the afternoon, and to reach Springfield in about one hour thereafter. When the freight train in question reached New Ulm, the excursion party boarded it, but the caboose would not hold them all; and some 18 of them, of whom the plaintiff was one, and one-third were ladies, voluntarily took passage in an empty freight car, next in front of the caboose, which was constructed in the usual manner of freight cars, with side doors only, 50 inches above the ground, and without seats, urinals, or steps. The station agent and the conductor in charge of the train advised the party in the car to wait for the passenger train, but acceded to the wishes of the party to be carried in this car, and

they were accepted as passengers. Thereupon the agent, with the assistance of some of the party, took seats from the waiting room, and placed them in the car, for the accommodation of such passengers.

This train and car, with the plaintiff and party, left New Ulm at some time between 2:30 and 3 o'clock p. m., and arrived at Sleepy Eye, an intermediate station 14 miles west of New Ulm, in 35 to 40 minutes thereafter, or at about 3:30 o'clock. The conductor had no passengers to discharge at Sleepy Eye, but did have freight to discharge and receive. He therefore ran the train directly to the freight depot, and stopped it to load and unload freight from and into the cars, in the usual way. This occupied from 30 to 45 minutes. During all of this time the caboose and the car in question were left standing in the yard, and away from the platform. The train contained 24 loaded freight cars, besides the caboose and the car occupied by the passengers: Its length was three times that of the depot platform, and it was not practicable to discharge the freight and keep the caboose at the platform, as the freight was in different cars. The reason assigned why the caboose was not first drawn up to the platform, and the work of discharging freight commenced at the rear end of the train, instead of at its head, as was done, was that the weight of the train and the grade of the track made it impracticable to back the train for the purpose of bringing the different cars to the platform for unloading. The evidence is undisputed that such was the fact.

During the time the car was standing in the yard, passengers got in and out of it, but the plaintiff remained therein until he was obliged to leave it for the purpose stated in his complaint; and while he was attempting to do so his foot slipped, and he fell to the ground, and was injured as claimed. None of the employés of the defendant connected with the train had notice of the necessity of the plaintiff to alight, or of his intention to do so. They did not furnish any steps or other means for getting out of or into the car, and none of them were present at the time and place of the accident, as they were all then engaged in the work of taking on and discharging freight. The plaintiff at the time of his injury was 58 years old, and had no urinary disease; was in good health, with no physical disability. He had lived at New Ulm for many years previously, and knew of the defendant's passenger train when he boarded the freight car. He also knew the construction of the car,—that it was not intended for pas-

sengers, and was wholly without any conveniences for them, or attendance of any employé of the defendant to assist them or to attend to their wants. After the trainmen had finished their work at Sleepy Eye, but after the plaintiff was injured, the car and caboose were drawn up to the platform and stopped, in accordance with the usual custom of the defendant at that place. But the plaintiff had no notice of such custom, or that the car would so stop at that platform.

The question presented for our consideration is whether these facts are sufficient to sustain a verdict for the plaintiff. If not, then the judgment of the district court for the defendant notwithstanding the verdict was correct.

The plaintiff was not required or invited by the defendant to take passage on the car and train in question. It simply permitted him to do so. He was under no necessity in the premises. On the contrary, he voluntarily selected this means of transportation, instead of waiting for the passenger train. He therefore assumed all of the risks and inconveniences reasonably and necessarily incident to that method of travel. He took the train and car as they were, and with reference to the purposes for which they were operated. The defendant had a right to discharge the duty imposed on it by law as to the safety of the plaintiff as a passenger with reference to the nature and purposes of the particular train and car selected by him, but it was bound to exercise the highest degree of care for his safety consistent with the practical operation of the train. Oviatt v. Dakota C. R. Co., 43 Minn. 300, 45 N. W. 436.

The correctness of this proposition is not seriously questioned by the plaintiff, but he claims that the standard of duty on the part of the defendant in this case was not fixed, but variable,—depending upon the inferences to be drawn from the admitted facts; therefore, that it was a question of fact, for the jury, whether the conductor might have reasonably anticipated the length of time that the train would stay at Sleepy Eye, and that the passengers in the freight car might reasonably need to get out to answer calls of nature during such stay, and whether the defendant, consistently with the practical operation of the train, might have furnished the plaintiff reasonable means for getting out of the car for such purpose. The conductor had a right to assume that persons suffering from urinary or diarrheal troubles would not voluntarily take passage on a freight

car with only freight-train accommodations, and he was not bound to reasonably anticipate that passengers free from such troubles would be under the necessity of leaving the car after it left New Ulm, and before it drew up to the platform at Sleepy Eye, the intervening time being not more than one hour and 25 minutes at the longest. Again, Sleepy Eye was not the point of destination of any of these passengers, and the defendant was not bound to furnish them at this point with safe ingress and egress to the car, unless it was for some necessary purpose, of which it had notice, or which it was bound to anticipate. De Kay v. Chicago, M. & St. P. R. Co., 41 Minn. 178, 184, 43 N. W. 182.

But the question whether the undisputed evidence in this case sustains the verdict for the plaintiff must be determined from a consideration of all of the admitted facts and circumstances of the case, examined and weighed together as a whole, and not in piecemeal. We have so considered them, and have reached the conclusion that the verdict for the plaintiff was not sustained by the evidence. It will serve no practical purpose here to discuss the evidence, for an orderly statement of the entire admitted facts in this case is the argument of it. A simple reading of such statement logically leads to the common-sense conclusion that the plaintiff has no legal or moral claim upon the defendant for compensation on account of his injuries.

Judgment affirmed.