SYLVESTER F. SIMONDS v. MINNEAPOLIS & ST. LOUIS RAILROAD
COMPANY.[1]

November 21, 1902.

Nos. 13,122—(106).

**Mixed Trains—Passengers.**

Passengers upon mixed trains assume all casual risks and discomforts incident to the movements of such trains, but this does not relieve a railway company from. the charge of actionable negligence in the management of mixed trains, or in the condition of the cars in which passengers are to ride.

**Negligence—Evidence.**

Upon an examination of the evidence in this case, it is *held* that there was sufficient evidence of negligence on the part of defendant to support the verdict of the jury in plaintiff's favor, and, further, that the question of plaintiff's contributory negligence was for the jury.

Action in the district court for Le Sueur county to recover $2,500 for personal injuries. The case was tried before Cray, J., and a jury, which rendered a general verdict in favor of plaintiff for $1,000, and also returned special findings, referred to in the opinion. From an order denying a motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*Albert E. Clarke,* for appellant.

*M. J. Severance* and *C. N. Andrews,* for respondent.

COLLINS, J.

This is an action to recover for personal injuries received while plaintiff was a passenger on defendant's line of railway. He had boarded a car, partitioned into two compartments, and called a "combination," which was attached to a long freight train, for the purpose of traveling some twelve or fifteen miles. He was thoroughly advised as to the manner of operating freight trains. One of the compartments, about one-third of the car, was for the use of the trainmen while the other was for passengers. In the partition above referred to was a heavy iron sliding door, suspended

1 Reported in 92 N. W. 409.

from above by rollers, and moving easily on a track.[2] The smaller compartment was in the rear on this day, and plaintiff took his seat in the larger, a few feet from and facing the iron door, which had been pushed back beside the partition and was open. He rode in this manner until he reached Echo station. He then rose to his feet and stepped forward through the doorway into the trainmen's compartment to ask the conductor whether the train would stop at Echo long enough for dinner. There was a sliding door in this compartment, on the side of the car, and the conductor sat upon a chest in front of this door, which was also open. Almost immediately after asking this question, plaintiff, while looking out of the doorway, heard a noise, and discovered that the freight cars in front were being driven back in an unusual and extraordinary manner, and hastened to resume his seat. Just as he was passing through the doorway, the movement of the train threw him forward violently. He seized the door jamb to save himself from falling, and at this time the sliding door shut against the jamb, caught his hand, and caused the injuries complained of. There was some dispute at the trial as to whether the train was moving when plaintiff started towards the smaller compartment, but there was testimony sufficient to sustain a special finding of the jury that the train had fully stopped when plaintiff left his seat and walked through the doorway. This special finding is conclusive upon this court, and is of importance when considering this appeal.

Two important questions are presented by the record: First, was there sufficient evidence of negligence on the part of the defendant railway company to warrant the verdict of the jury, which was in plaintiff's favor? And, second, if there was sufficient evidence of defendant's negligence, did it conclusively appear that the plaintiff was guilty of such contributory negligence as would preclude a recovery for the damages he received?

1. It is manifest from the testimony that while about one-third of this car was partitioned off for the use of the trainmen, and was not designed for ordinary occupation by passengers, no at-

2 See opinion of December 8 on page 412.

tempt was made to exclude them from entering this compartment at any time, and remaining there while the train was in motion. The seats provided for the use of passengers were in the larger compartment, but it appeared that passengers not only used the smaller as a means of egress and ingress from and to the larger from station platforms, but that they occupied it for smoking and other purposes, and at times for sitting. No effort was made upon the part of the defendant to controvert the testimony upon these points, or to show that any rule or regulation had ever been adopted which would prevent passengers from occupying or passing through this part of the car if they felt so inclined. Even if there had been a rule prohibiting passengers from riding therein that fact would not absolve the defendant company from the duty of care towards passengers who habitually disregarded the rule, and were permitted by defendant company to ride there. Jones v. Chicago, St. P., M. & O. Ry. Co., 43 Minn. 279, 45 N. W. 444. See also Jacobus v. St. Paul & C. Ry. Co., 20 Minn. 110 (125).

It is true that this was a mixed train, but carriers of passengers are bound to use the best precautions in known practical use to secure the safety of their passengers, whether they are carried upon mixed or exclusively passenger trains. But this does not require that railway companies shall adopt on mixed all the appliances which they are bound to use on passenger trains. It merely demands the highest degree of care consistent with the practical operation of the mixed trains. Oviatt v. Dakota Central Ry. Co., 43 Minn. 300, 45 N. W. 436. It is also a fact that mixed trains cannot be managed and controlled as are passenger trains, and, as a consequence, accidents occur more frequently. The bumping or collision of the cars while slacking, and what is known as "taking out the slack," on one of these trains, and sudden jars and jerks, are exceedingly annoying, oftentimes risky, but are common and unavoidable in the running of mixed trains, while they are almost unknown and are inexcusable in those used exclusively for passengers. The latter must, of course, assume all these casual risks and disagreeable incidents, but this rule does not relieve defendant of the charge of actionable negligence in its management of the train in question, or in maintaining a door in an unfastened

and dangerous condition. If the plaintiff was lawfully within the range of the movements of such a door, how can it be said that the defendant was not negligent in permitting it to remain in a condition dangerous to those who might be permitted to pass through the doorway while the train was either stopping or starting, and liable to throw passengers off their feet? From the testimony it clearly appears that the jerking and bumping of the train, which unquestionably caused the door to shut against plaintiff's hand, was extraordinary and unusual; one of the witnesses testifying that he thought the car was being knocked off the track. The jury had the right to conclude that the management of the train was improper, in view of the dangerous and negligent condition of the door, and that the sudden shutting of the latter was the proximate cause of plaintiff's injury.

2. It is contended that the plaintiff was guilty of contributory negligence when he rose from his seat and stepped through the doorway to talk with the conductor, but this claim is largely predicated upon the unwarranted assertion that he had no right to go into the trainmen's compartment. It is true that he might have spoken to the conductor without rising, but it does not follow that he was obliged to do this, in order to escape the charge of contributory negligence, or that he would be guilty of such negligence if he passed from his seat to that part of the car in which the conductor sat. It was not negligence for him to leave his seat while the train was standing still; nor was it negligence for him to pass into that part of the car designed for trainmen, but used, as before stated, by passengers for going in and out of the car, and for smoking and other purposes. Another passenger, who had been sitting with plaintiff, passed through this compartment and out onto the platform of the car immediately before he asked the question about dinner, without a word of remonstrance from the conductor. Nor did the conductor, when plaintiff passed through the door and asked the question, suggest to him that he was in a part of the car not properly to be occupied by passengers. While no definite and fixed rule can be laid down by which to determine when passengers upon a train of this character are guilty of negligence in leaving their seats or in going into another compartment,

the plaintiff was not conclusively shown to have been so negligent as to prevent a recovery for the injury received. It follows that the question of plaintiff's contributory negligence was for the jury to pass upon.

3. We have examined the assignments of error going to the admission or rejection of testimony at the trial, and find none which need special attention, for no prejudicial error appears in the rulings.

Order affirmed.

On December 8, 1902, the following opinion was filed:

PER CURIAM.

By defendant's petition we are informed that the iron door which closed upon plaintiff's hand and caused the injury was in the side of the car, and not in the partition between the compartments, as stated in the opinion. This was not made clear by plaintiff's testimony, and, from the fact that he had one hand upon a seat in the passengers' compartment when the door caught the other, we rather naturally, and, we think, excusably, assumed that the door in question was in the partition, and so stated. However, the exact location of the door is wholly immaterial. The danger to be anticipated from it is apparent, when we consider that the plaintiff had gone so far into the passengers' compartment when the cars came together that one hand was caught, while he had the other upon the seat in which he had been sitting but a short time before. He certainly was (to use an expression from the opinion) "within the range of the movements of such a door" when injured. This being the fact, it is of no consequence whatever, under the law of this case, that the dangerous and unfastened door was in the side of the car, instead of in the partition.

Petition for rehearing denied.