ALICE CAMPBELL v. DULUTH & NORTHEASTERN RAILROAD COMPANY.[1]

March 19, 1909.

Nos. 15,834—(191).

**Standard of Care.**

The general standard of care fixed by the law is commensurate care, or due care under the circumstances.

**Care for Safety of Passengers.**

A railroad as a common carrier is required to exercise the highest degree of care, skill, and foresight for the safety of passengers consistent with the practical operation of its road.

**Same.**

The standard of care has due regard to the circumstances; that is to say, "in reference to every particular the highest degree of care which can be exercised in that particular, with a reasonable regard to the nature of the undertaking and the requirement of the business in all other respects," must be exercised.

**Passengers on Mixed Train.**

A common carrier of passengers on a freight or mixed train is required to exercise the highest degree of care consistent with the practical operation of such a train.

[1] Reported in 120 N. W. 375.

**Care Required on Logging Railway.**

A carrier having limited fitness and capacity to transport passengers, and whose primary business is to transport its logs, is not held to the standard of perfection of an ideal road, but must exercise the highest degree of care practicable under the circumstances.

**Admissible Evidence.**

Evidence of care customary among well constructed and operated roads of the same class is admissible to show diligence, in an action brought by a passenger injured while riding in a freight train of a logging road.

**Question for Jury.**

In this case it is *held* that whether defendant was a general commercial railroad or a logging road was a question of fact for the jury.

Action, in the district court for St. Louis county to recover $12,000 damages for personal injuries incurred while a passenger upon defendant's train. The case was tried before Ensign, J., and a jury which returned a verdict in favor of plaintiff for $2,000. From an order denying defendant's motion for a new trial, it appealed. Reversed and new trial granted.

*H.Oldenburg* and *Davis & Hollister,* for appellant.

*John Jenswold, Jr.,* for respondent.

JAGGARD, J.

Plaintiff was injured while riding as a passenger in the caboose of the defendant's mixed train. She had a verdict. The first controversy in this appeal is whether the record contains any evidence tending to show that defendant was a so-called logging road, as distinguished from the ordinary commercial carriers. The question is not clear, because the controversy does not appear to have been satisfactorily litigated. Counsel for plaintiff himself, however, in his own questioning on trial, assumed that defendant was a logging road. In his brief on this appeal he asks: "Is it for this court to license the use of such track [as defendant's] when owned or operated by the company primarily for the purpose of carrying its lumber? Is a passenger on such a road to assume risks which he would not on other roads?" We have concluded that the record discloses enough to have made this a question of fact, to be tried by the jury.

The question then arises whether the court was in error in giving a charge which defined the duty of the defendant in the carriage of

plaintiff to be that of the ordinary commercial carrier of passengers—
"to exercise the highest degree of care, skill, and foresight for the
safety of the plaintiff which was consistent with the practical opera-
tion of its means of transportation."

More specifically, the court charged that: "In the carriage of the
plaintiff, she assumed such sudden jars and jolts as are common and
unavoidable in the starting or running of mixed trains; but she did
not assume any risk growing out of any negligence  *  *  *  result-
ing from *the unevenness of the track* or the failure to connect the air
brakes on the entire train, nor did she assume the risk of injury by the
negligence or want of care of the train crew in charge of the train,
nor did she assume the risk of being injured by the breaking of the
train in question." (The italics are ours.) The court charged, how-
ever, that when a passenger takes passage on a freight or mixed train
he assumes all risk reasonably or necessarily incident to being carried
by a method which he voluntarily chooses. It denied defendant's
elaborate requests to charge, which, while not all verbally accurate or
correct, were sufficient to direct the attention of the court before the
jury retired to the question whether defendant was to be held to the
standard of care by which the negligence of an ordinary commercial
carrier of passengers is held.

It is clear on general principles, and it is the law in this state, that
the test of care is not whether in degree it should be slight, ordinary, or
extreme care, but commensurate care, due care under the circumstan-
ces. The adoption of this standard would logically result in the aboli-
tion of degrees of negligence. In a measure this has followed. With
respect to carriers, however, the traditional standard appears to have
survived. In case of ordinary railroads affording regular passenger
service, soliciting such traffic, holding themselves out as able to take
care of it, and running through passenger trains of great weight at
tremendous speed, commensurate care is regarded as supreme or the
highest practical care. The standard care, however, has proper regard
to the circumstances; that is to say, in reference to every particular,
the highest degree of care which can be exercised in that particular,
with a reasonable regard to the nature of the undertaking and the re-
quirements of the business in all other respects, must be exercised.

Dodge v. Boston, 148 Mass. 207, 218, 19 N. E. 373, 2 L. R. A. 83, 12 Am. St. 541.

It is not accurate to say, as is often said, that certain classes of cases involve a relaxation in the degree of care exacted, or that they constitute exceptions to the general rule requiring supreme care. The degree of care is the same. Certain circumstances are recognized as differentiating the result of its exercise; that is, there are particular situations in which commensurate care does not require of certain carrier service the same tracks, equipment, and operation as is exacted of main trunk lines operating exclusively passenger trains. Thus a passenger on a freight or mixed train "assumes all risks reasonably and necessarily incident to being carried by the method which he voluntarily chooses. What the law does require is everything necessary to the security of passengers, consistent with the business of the carrier and the means of conveyance employed; the highest degree of care consistent with the practical operation of such train." Mitchell, J., in Oviatt v. Dakota C. Ry. Co., 43 Minn. 300, 303, 45 N. W. 436. And see Rosenbaum v. St. Paul & D. R. Co., 38 Minn. 173, 36 N. W. 447, 8 Am. St. 653; Schilling v. Winona & St. P. R. Co., 66 Minn. 252, 68 N. W. 1083; Simonds v. Minneapolis & St. L. R. Co., 87 Minn. 408, 92 N. W. 409; Chicago v. Arnol, 144 Ill. 261, 270, 33 N. E. 204, 19 L. R. A. 313; Railway Co. v. Sweet, 57 Ark. 287, 21 S. W. 587; Hall v. Murdock, 114 Mich. 233, 72 N. W. 150 (freight elevator). The trial court recognized this particular rule, but refused to apply the underlying principle to defendant's track.

The same principle also requires that the care to be exercised by carriers of passengers should have due reference to the nature of the road operated, the extent of its passenger traffic, its capacity and fitness to transport passengers, and to like considerations. Thus a person who, while a passenger on a train running upon a branch line of a railroad about ten miles in length, and consisting of freight cars and a combination car in which he is riding, one part of which is designed for passengers and another part for baggage, is injured by such jerking and jolting of the car as is ordinarily incident to a train of this kind, and who is familiar with the nature of the business on this line and the manner of conducting it, cannot maintain an action against the railroad corporation for his injury. Olds v. New York, 172 Mass.

73, 51 N. E. 450. In I. & G. N. Ry. Co. v. Copeland, 60 Tex. 325, 330, it was said: "The liability of a railway company for negligence will, to a degree, be limited by its capacity and fitness to transport passengers, known to a passenger when he elects to be transported on it. Hence a short line road, doing a small business and running only mixed trains, is not required to apply all the delicate checks and guards that are in use." "Treating of the subject of the use of certain engines and machinery on short branch roads like the one under consideration, with comparatively a small amount of business, Mr. Wharton says: 'If I employ a carrier of small means and machinery, knowing what his capacity is, I must take him as I find him. * * * A railroad, doing a small business, in a sparsely populated territory, and running only a few trains, is not required to apply all the delicate checks and guards that are in use. * * * Diligence in all these cases is not the perfection of the ideal road. It is the practical adequacy of the actual road for the particular duty it undertakes.' Wharton on Neg. § 140." And see Shoemaker v. Kingsbury, 12 Wall. 369, 20 L. Ed. 432 (construction train); Wade v. Lutcher & M. C. L. Co., 74 Fed. 517, 20 C. C. A. 515, 33 L. R. A. 255 (in which a logging road was held to have been a private carrier).

The rule applicable to so-called logging roads, in the nature of things, depends largely upon the circumstances of each case. Ordinarily, logging roads in this state are subject to the jurisdiction of the railroad and warehouse commission. Their exact legal status does not, however, determine the criterion of the care which they are required to exercise. There are many such roads, whose business is primarily the carrying of the company's own logs. It is urged, however, that the profitable business of an ordinary commercial railroad is to carry freight. None the less the distinction between the two classes of roads, so far as exercising care is concerned, is obvious and founded in nature.

Logging roads carry in a caboose, or even in a passenger coach, their employees and the necessarily limited population of the territory through which they run. Their passenger business is small. Many persons are carried gratuitously. Such roads do not especially solicit passengers, nor do they prepare train schedules, or provide conventional passenger equipment. Usual arrangements for the convey-

ance or convenience of passengers are generally absent. They do not ordinarily run through passenger trains, nor any trains with great speed, nor do they usually provide convenient way stations. Indeed, they often have not even terminal stations. The equipment bears no resemblance to that of a through trunk line. Their tracks are not intended for rapid transportation, are more or less temporary in structure, and in this country often pass over bogs which can be used only in the winter season, when the cold makes the roadbed solid. They are generally inferior in construction, irregular in course, heavy in grades, and sharp as to curves.

If the rule of law as to care to be exercised by common carriers of passengers were inflexible, and such logging roads were to be required to furnish the same tracks, trains, and equipment generally as are commercial roads, the result would be the judicial prohibition of enterprises of their nature. All that is required of such roads is the exercise of the highest care under the circumstances. The passenger must take such roads as he finds them. A carrier having limited fitness and capacity to transport passengers, and whose primary business is to transport its logs, is not held to the standard of perfection of an ideal road, but must exercise the highest degree of care practicable under the circumstances. The authorities involving the application of principles of facts most nearly similar tend, although not very clearly, to support this conclusion. Boisen v. Cobbs, 147 Mich. 429, 111 N. W. 82; Demko v. Carbon H. C. Co., 136 Fed. 162, 69 C. C. A. 74; Williams v. Northern L. Co. (C. C.) 113 Fed. 382; Harvey v. Deep River, 49 Ore. 583, 90 Pac. 501, 12 L. R. A. 131.

It follows that a new trial must be granted. In this view it is unnecessary to anticipate the course of that trial by a discussion of the other points raised, beyond saying that the defendant should have called to the attention of the trial court before the jury retired any improprieties in the charge of the court as to the extent to which a wife could recover for her decreased capacity to labor, and that evidence of customary care among well-equipped, well-operated roads of the same general character was admissible.

Reversed and new trial ordered.