ANNA ZURKO v. ROGER G. GILQUIST AND ANOTHER.[1]

January 8, 1954.

No. 36,092.

[1]Reported in 62 N. W. (2d) 351.

*Emerson Hopp,* for appellant.
*Hansen, Hazen & Lynch,* for respondent.

FRANK T. GALLAGHER, JUSTICE.

This is an action to recover damages for the death of Maxim Zurko brought by the special administratrix of his estate against Roger G. Gilquist and Northland Greyhound Lines, Inc. An action for funeral expenses brought by decedent's widow was incorporated in this action. At the close of plaintiff's evidence, the court directed a verdict in favor of Northland Greyhound Lines, Inc. At the close of the trial, the jury found for Roger G. Gilquist. Plaintiff appeals from the order of the district court denying her motion for a new trial against Gilquist only.

Between nine and ten o'clock on the evening of October 29, 1950, at the outskirts of Cambridge, Minnesota, decedent got off a northbound bus of Northland Greyhound Lines, Inc. According to the undisputed testimony of the bus driver, he had driven the bus "prac-

tically all the way off" the paved portion of the highway and onto the right shoulder in order to discharge the passenger. After leaving by the door at the right front of the bus, decedent moved around behind the bus and then either walked or ran onto the north-south highway where he was struck and killed by Gilquist's southbound car.

Gilquist testified that, as he neared the scene of the accident, he saw the bus stop on the edge of the highway but that he did not know that passengers were being discharged until he got closer to the bus and saw decedent come out from behind it. He conceded that when he first sighted the bus he was traveling about 50 miles per hour but testified that he then slowed to a speed of about 45 miles per hour. In answer to the question "When did you apply your brakes?" Gilquist responded, "Immediately when I saw him [decedent] start running, I applied my brakes." He testified that he was then about 40 feet from decedent.

Plaintiff makes numerous assignments of error. It is our opinion that we need discuss only the one which deals with the final instruction to the jury. The trial court charged the jury in part:

"First, as to the defendant Gilquist, the law of the road in this State provides as follows: * * * Where no special hazard exists, the following speeds shall be lawful, but any speed in excess of such limits shall be prima facie evidence that the speed is not reasonable or prudent and that it is unlawful. At the time and place of the accident under this situation, a speed of 50 miles an hour was a lawful speed. A speed in excess of 50 miles an hour under this situation would be prima facie evidence that the speed was not reasonable or prudent and that it was unlawful."

These portions of the charge had reference to the fact that the section of the highway involved had a posted speed limit of 50 miles per hour at night so that under the provisions of M. S. A. 169.14, subd. 2, a speed in excess of that limit would be prima facie evidence that such speed is unlawful. However, the law imposes further restrictions on speed. Section 169.14, subd. 1, provides:

"No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing. In every event speed shall be so restricted as may be necessary to avoid colliding with any person, vehicle or other conveyance on or entering the highway in compliance with legal requirements and the duty of all persons to use due care."

Section 169.14, subd. 3, provides:

"The driver of any vehicle shall, consistent with the requirements, drive at an appropriate reduced speed * * * when special hazards exist with respect to pedestrians or other traffic or by reason of weather or highway conditions."

It is our opinion that the court's charge that "At the time and place of the accident under this situation, a speed of 50 miles an hour was a lawful speed" could have been understood by the jury as an instruction that, notwithstanding the presence of the bus parked at the side of the highway, there were no special hazards in the vicinity of the accident and that as a matter of law any speed not exceeding 50 miles per hour was proper. Under proper instructions, however, a jury might well have concluded that the presence of the bus was such a "special hazard" as to require a reduction in the speed of an approaching vehicle below the 50-mile-per-hour limit otherwise appropriate. Whether and to what extent a reasonably prudent driver should have reduced his speed in such circumstances was a question of fact for the determination of the jury, and the jury should have been more clearly instructed to that effect.

Concededly, the correct rule with respect to the effect of special hazards on the road was stated in other portions of the charge in the instant case. Further, it is elementary that a jury charge must be construed as a whole. In other words, it may not be attacked successfully by lifting a single sentence or even a paragraph from its context. Froden v. Ranzenberger, 230 Minn. 366, 41 N. W. (2d) 807; 6 Dunnell, Dig. & Supp. § 9781.

On the other hand, in construing a jury charge as a whole, it must be scrutinized and tested from the standpoint of its total impact or impression upon the jury. If as a whole its impact gives the jury an erroneous conception of the controlling principles of law, then it cannot be defended and found sufficient as a whole by a careful analysis of the technical relations of its various provisions to each other when such technical relationships would not reasonably have been apparent to the jury. Roach v. Roth, 156 Minn. 107, 194 N. W. 322; Craig v. Benedictine Sisters Hospital Assn. 88 Minn. 535, 93 N. W. 669; Mailand v. Mailand, 83 Minn. 453, 86 N. W. 445; 6 Dunnell, Dig. & Supp. § 9794.

In construing a charge as a whole, its adequacy in correctly setting forth controlling principles of law is to be measured by the meaning it reasonably conveys to the jurors who hear it only once and have no opportunity to examine it in written form. Even though a jury charge may by close inspection be found to be technically correct in its entirety, a new trial should be granted if its impact upon the jury is likely to convey, and reasonably does convey, an erroneous understanding of controlling principles of law.

It is our opinion that, under the portion of the instruction quoted above, the jury could have received the erroneous impression under the circumstances here that it was proper for Gilquist to have driven up to 50 miles per hour.

Since we conclude that the error in the instruction was "with respect to fundamental law or controlling principle," it is immaterial that it was not called to the attention of the trial court until the filing of the motion for a new trial. Rule 51 of Rules of Civil Procedure.

Reversed and new trial granted.

MR. JUSTICE KNUTSON took no part in the consideration or decision of this case.