GUIDA FIEVE v. ALVIN EMMECK AND ANOTHER.
HENRY C. GOTTWALD, d.b.a. YELLOW CAB
COMPANY, APPELLANT.

78 N. W. (2d) 343.

August 3, 1956—No. 36,843.

*Schermer & Gensler,* for appellant.

*Thomas J. Battis* and *Murnane & Murnane,* for respondent Emmeck.

*Dygert & Riordan,* for respondent Fieve.

DELL, CHIEF JUSTICE.

This is an action to recover damages for personal injuries suffered as a result of an intersection collision between a taxicab in which the plaintiff was a passenger and another automobile.

The collision occurred on December 21, 1953, at approximately 7 p. m. at the intersection of Highway No. 61 and Burns Avenue in St. Paul. At that point Burns Avenue runs in an easterly and westerly direction and Highway No. 61 in a northerly and southerly direction. The highway is divided into two concrete lanes each of which is approximately 29 feet wide and they are separated by a boulevard approximately 18 feet in width. There are two stop signs controlling traffic approaching the highway on Burns Avenue from

the west, one at the intersection of the southbound lane of the highway and Burns Avenue and the other located on the boulevard, requiring vehicles to stop before entering into the northbound lane of the highway.

The plaintiff, Guida Fieve, was a passenger in a taxicab driven by David Goldberg and owned by the defendant Henry C. Gottwald, d.b.a. Yellow Cab Company, which taxicab approached the intersection traveling in an easterly direction along Burns Avenue. The defendant Alvin Emmeck and his wife approached the intersection in a northerly direction in his automobile, proceeding in the northbound lane of Highway No. 61. While there is a curve in the highway, it ends at a point approximately 150 feet south of Burns Avenue, and from that point up to the intersection the highway is straight  The weather was clear, and while there was some testimony that the highway was icy in spots, the roads were ice-free and dry at the intersection.

Taking the view of the evidence most favorable to the verdicts, the circumstances of the collision are as follows: When Emmeck was approximately 100 to 150 feet south of the intersection he first noticed the taxicab which was then crossing the southbound lane of the highway and traveling at an estimated speed of 18 to 20 miles an hour. Emmeck was then in a 40-mile an hour speed zone and was traveling at a speed of approximately 35 miles an hour. The northbound highway was comprised of two driving lanes with a blacktop shoulder to the east. Emmeck approached the intersection traveling in the lane closest to the shoulder. He knew that there was a stop sign controlling traffic entering the northbound lane from the west and assumed that the taxicab would stop in obedience to the sign. He reduced his speed as he approached the intersection. When he was approximately 10 to 20 feet from the intersection and traveling at a speed of about 25 miles an hour he observed, for the first time, that the taxicab was not going to stop in obedience to the stop sign but was going to cross the northbound lane directly in front of him. He immediately applied his brakes with full force but was unable to avoid a collision, and the front end of his automobile

struck the cab near its right rear door. At the time of the actual impact, Emmeck was traveling at approximately 10 to 15 miles an hour. As a result of the collision, plaintiff was thrown from the rear seat of the taxicab onto the street suffering severe injuries.

While the driver of the taxicab, David Goldberg, testified that he stopped for the stop sign located on the boulevard which controlled traffic moving in an easterly direction across the northbound lane of Highway No. 61, he also testified that he had an unobstructed view for 300 feet to his right but failed to see the lights of any vehicle approaching from the south; that as he entered into the northbound lane he was looking off to the left "where the [plaintiff's] apartment was located" because plaintiff was giving him directions as to where he was to turn after he crossed the intersection and he "wanted to be sure and see just where * * * [he] was going to turn"; that just after he entered the northbound lane he heard the plaintiff gasp, looked to his right, and for the first time saw the lights of a car approximately 40 to 50 feet to the south and approaching the intersection at a speed which he estimated to be about 45 to 50 miles an hour; and that he then stepped hard on his accelerator but was struck before the taxicab had a chance to respond.

The jury returned a verdict in the sum of $17,500 in favor of the plaintiff and against the defendant Gottwald. It also returned a verdict for the defendant Emmeck finding him "not guilty of negligence." Thereupon defendant Gottwald made a motion for a new trial as to all parties but the motion was denied. Judgment was subsequently entered in accordance with the verdicts. This appeal was thereupon taken from the order denying defendant Gottwald's motion for a new trial as well as from the judgment.

Gottwald does not question the size of plaintiff's verdict nor does he contend that the verdicts are not sustained by the evidence. He claims, however, that a new trial should be granted because of: (1) Alleged error in the instructions to the jury, and (2) improper statements made by counsel for Emmeck in his closing argument to the jury.

■ Gottwald argues that the charge given by the court failed to set up a criterion by which the jury could properly test the standard of care required of a common carrier. The court properly defined ordinary negligence to the jury and then instructed it that that standard or degree of care did not apply to one of the defendants in the case. This was followed by an instruction that under certain situations a higher degree of care is required than that exercised by a person of ordinary care and prudence. The jury was then instructed:

"A taxi cab is not an insurer of the safety of its passengers. A taxi cab company engaged in the business of transporting persons for hire is a common carrier and as such the owner as well as the employee *has a duty to exercise the highest degree of care and foresight for the safety of its passengers consistent with the proper conduct of its business and to take every precaution to protect them from injury, including the duty to employ competent drivers.*" (Italics supplied.)

The italicized portion of the charge is substantially the identical language used in McKellar v. Yellow Cab Co. Inc. 148 Minn. 247, 181 N. W. 348,[1] wherein the court discussed and defined the degree of care that a common carrier owes to its passengers. Following the court's instructions, counsel for Gottwald excepted to specific portions thereof.

Gottwald contends that the court erred in that the phrase "practical operation of its business" should have been used in place of "proper conduct of its business." It is to be noted that in other decisions of this court various terms or forms of expression have

[1]The language in the McKellar case, after which the district court evidently patterned its charge, was as follows (148 Minn. 250, 181 N. W. 349):

"It was the duty of defendant, as a common carrier, to exercise the highest degree of care and foresight for the safety of its passengers consistent with the proper conduct of its business, and to take every reasonable precaution to protect them from injury. 1 Dunnell, Minn. Dig. § 1261; also cases cited in notes found at page 179, Ann. Cas. 1913E, and page 47, Ann. Cas. 1918C. This duty imposed the obligation to have skilled and careful drivers who were alert at all times to discover and avoid danger."

been used in stating the general rule relating to the degree of care required of common carriers.[2] While Gottwald cites cases[3] which use the phrase "highest degree of care consistent with the practical operation" of the train, there are numerous other decisions of this court[4] which have used language substantially similar to that used in the charge given in the instant case, including that of McKellar v. Yellow Cab Co. Inc. *supra,* from which the language used in the charge here evidently was taken.

Even though there is a distinction between "practical operation of its business" and "proper conduct of its business," it is a distinction without a significant difference as applied to a situation such as we have in the present case. It is elementary that a charge

---

[2] See 3 Dunnell, Dig. (3 ed.) § 1261, where the various terms and forms of expression used by this court, in defining the duty of a common carrier, are listed.

[3] Oviatt v. Dakota Cent. Ry. Co. 43 Minn. 300, 45 N. W. 436; Schilling v. Winona & St. Peter R. Co. 66 Minn. 252, 68 N. W. 1083; Simonds v. Minneapolis & St. L. R. Co. 87 Minn. 408, 92 N. W. 409; Campbell v. Duluth & Northeastern R. Co. 107 Minn. 358, 120 N. W. 375, 22 L.R.A.(N.S.) 190; Schultz v. Minneapolis & St. L. R. Co. 123 Minn. 405, 143 N. W. 1131. While it is by no means decisive of the question of whether this phraseology is the most appropriate in defining the standard of care to which a common carrier is to be held, it should be noted that all of the above cases cited by the defendant Gottwald dealt with only one type of common carrier, "mixed trains," which were described in the opinions as freight trains which also carried passengers.

[4] Hoblit v. Minneapolis St. Ry. Co. 111 Minn. 77, 78, 126 N. W. 407 ("consistent with the proper and orderly conduct of its business in the operation of its cars as a common carrier"); Mardorf v. Duluth-Superior Transit Co. 199 Minn. 325, 327, 271 N. W. 588, 589 ("consistent with the proper conduct of defendant's business and the operation of the streetcar"); Waldo v. St. Paul City Ry. Co. 244 Minn. 416, 422, 70 N. W. (2d) 289, 293 ("consistent with the nature of their undertaking"); Fewings v. Mendenhall, 88 Minn. 336, 340, 93 N. W. 127, 128, 60 L. R. A. 601, 603 ("consistent with the orderly conduct of its business"); see, Prosser, Torts (2 ed.) § 33, "Carriers who accept passengers entrusted to their care must use great caution to protect them, which has been described as 'the utmost caution characteristic of very careful prudent men,' or 'the highest possible care consistent with the nature of the undertaking.'"

must be considered as a whole and, further, must be scrutinized and tested from the standpoint of its total impact or impression upon the jury.[5] Here the court first instructed the jury as to the standard of care required in an ordinary negligence action and then instructed it that a higher standard of care is required in cases involving common carriers. The jury was specifically told that a taxicab company is not an insurer of the safety of its passengers. The higher standard of care imposed upon common carriers was further limited by the phrase "consistent with the proper conduct of its business." Thus, the charge properly construed did not, as Gottwald suggests, require the carrier to do everything it was possibly capable of doing to prevent the injury, but rather, it was required to exercise the highest degree of care only insofar as such care was consistent with the proper, ordinary, or usual conduct of the carrier's business. A fair and impartial reading of this language, particularly with a view to the total impact upon, or impression it would reasonably tend to convey to, a jury, convinces us that the jury in the instant case was given a proper criterion or standard by which to test the duty that a common carrier owes to its passengers.

Gottwald further argues that, by the failure of the court to include the word "reasonable" before the word "precaution" in the quoted portion of the charge, the effect of the charge was to erroneously subject the carrier to the widest and broadest liability conceivable. We do not agree with that contention. It is elementary that a jury charge may not be attacked successfully by lifting a single word or sentence from its context but rather must be considered as a whole.[6] The phrase "and to take every precaution to protect them from injury" followed that part of the charge which has been previously discussed. Considered in that context, rather than as a separate and distinct sentence, and particularly in view of the limiting statements contained therein, we do not believe that the charge, viewed in its entirety, presented the jury with an erronous conception of the controlling principles of law involved in the instant case.

[5]Zurko v. Gilquist, 241 Minn. 1, 62 N. W. (2d) 351.

[6]Zurko v. Gilquist, 241 Minn. 1, 62 N. W. (2d) 351; Froden v. Ranzenberger, 230 Minn. 366, 41 N. W. (2d) 807.

■ Moreover, while Gottwald now asserts that it was error for the lower court to fail to include the word "reasonable" before the word "precaution," his exceptions taken at the conclusion of the charge failed to specifically call that omission to the court's attention. His exceptions to the charge in this regard were based on the ground that the phrase "every precaution to protect them from injury" should have been modified to read "every precaution to protect them from injury commensurate with the practical operation of its business." While the charge given in this case appears to have been patterned after the language used by this court in the McKellar case, *supra*, the court failed to include the word "reasonable" before the word "precaution." This seems clearly to have been an inadvertent omission, and under Rule 51, Rules of Civil Procedure, "No party may assign as error unintentional misstatements and verbal errors, or omissions in the charge, unless he objects thereto before the jury retires to consider its verdict, *stating distinctly the matter to which he objects and the grounds of his objections.*"[7] (Italics supplied.) We conclude that the charge, considered in its entirety, was not misleading and as given did not constitute prejudicial error.

■ In his motion for a new trial Gottwald claimed that the court erred in permitting counsel for Emmeck to discuss the matter of settlement in his final argument to the jury; also that counsel for Emmeck was guilty of misconduct in arguing such matter to the jury. It is not clear from his assignments of error in this court, or from his statement of the questions involved on this appeal, what precise issue relating to said argument Gottwald claims is before us for review. Plaintiff and Emmeck both claim that the assignment of error is sufficient only to raise the question "Was counsel's reference to settlement both improper and prejudicial?" We shall, however, treat the assignment of error concerning this matter as sufficient to present three questions: (1) Did the court err in permitting counsel for Emmeck to make the argument which it is claimed was improper; (2) was counsel for Emmeck guilty of mis-

[7]See, also, Storey v. Weinberg, 226 Minn. 48, 31 N. W. (2d) 912; Nelson v. Twin City Motor Bus Co. 239 Minn. 276, 58 N. W. (2d) 561.

conduct in making the argument that he did; and (3) is Gottwald entitled to a new trial because of what was said in the argument?

When Emmeck was called for cross-examination by plaintiff under Rule 43.02 of the Rules of Civil Procedure, he testified that he had reported to "nobody" and had "made no signed statement" concerning the accident; and on another occasion, when asked whether he had made a statement, signed or otherwise, to anybody, he answered "Not that I know of." The matter rested there until Emmeck started to put in his case. Counsel for Gottwald then commenced to develop that Emmeck had made a statement to Richard Prescott, an investigator for plaintiff's attorneys. When objection was made by Emmeck's counsel, the matter was dropped, and counsel for Gottwald then started to cross-examine Emmeck concerning a statement purportedly given by him and taken down by Dorothy Rosselind, a public stenographer, in response to questions propounded by Harold J. DeGree acting on behalf of the defendant Gottwald. This resulted in a conference with the court, outside of the hearing of the jury, in which the use of the statement and the admissibility of its contents, under the circumstances of this case, were questioned and explored by counsel and the court alike. During that discussion counsel for Gottwald inquired of counsel for Emmeck whether he would stipulate of record that Emmeck signed a release for any claims he might have as a result of the accident, and he also offered to prove that Emmeck and his wife signed a release of any claim that they might have against Gottwald prior to the time that the case on trial was commenced. After considerable discussion the trial resumed and counsel for Gottwald cross-examined Emmeck fully concerning the statement taken down by the public stenographer. Thereafter Emmeck was permitted to testify, without objection, that he told Prescott that his case was settled. At a later stage in the proceedings, when Gottwald was putting in his case, Prescott, DeGree, and Miss Rosselind all testified concerning the inconsistent statements they claimed Emmeck had made. Thereafter, on cross-examination of Prescott, the following occurred:

"By Mr. Murnane:

"Q. Do you recall that you told Mr.—or that Mr. Emmeck told you that Mr. and Mrs. Emmeck's claims against the cab company were settled?

"Mr. Riordan: That's objected to, of course, as being improper.

"Mr. Schermer: *Let him answer.*

"A. Yes, Mr. Emmeck told me that." (Italics supplied.)

From what transpired it is clear that Emmeck's assertion, that his claim against Gottwald was settled, was not only placed in evidence without objection but at the express invitation of Gottwald's own counsel. Moreover, while testimony relative to the settlement was not admissible as evidence of an admission of liability by Gottwald,[8] it was relevant and was properly admitted for the limited purpose of explaining the circumstances under which the statement was given.[9] "A party may always explain the circumstances under which inconsistent statements or claims were made and reconcile them with his testimony." Henslin v. Wingen, 203 Minn. 166, 169, 280 N. W. 281, 282.[10] This rule is followed even though the witness may originally have denied making the prior statement.[11] Nor is Esser v. Brophey, 212 Minn. 194, 3 N. W. (2d) 3, cited by Gottwald, controlling of the instant case since there the evidence of settlement was received *solely* for the purpose of showing an admission of liability.

■ In his argument to the jury counsel for Emmeck was permitted to argue, over the objection of counsel for Gottwald, that it would have been proper, had it not been for intervening circumstances, for Emmeck to assert a cross-claim against the cab com-

---

[8]Schiro v. Raymond, 237 Minn. 271, 54 N. W. (2d) 329; Esser v. Brophey, 212 Minn. 194, 3 N. W. (2d) 3; Bartels v. Schwake, 153 Minn. 251, 190 N. W. 178.

[9]Schiro v. Raymond, 237 Minn. 271, 54 N. W. (2d) 329.

[10]See, also, Aide v. Taylor, 214 Minn. 212, 7 N. W. (2d) 757, 145 A. L. R. 530; 3 Wigmore, Evidence (3 ed.) § 1044; 7 Id. § 2114(4); 6 Jones, Commentaries on Evidence (2 ed.) § 2413.

[11]Jaspers v. Lano, 17 Minn. 273 (296); Aide v. Taylor, 214 Minn. 212, 7 N. W. (2d) 757, 145 A. L. R. 530.

pany, and that the reason why this was not done was known to the jury; also that Emmeck had testified that his claim against the cab company had been settled; that explained the reason why no claim had been made by Emmeck against the cab company; and further that Emmeck had been paid. Emmeck's counsel also told the jury, however, that this matter was not called to the attention of the jury in an attempt to convince it that because a payment was made that for that reason the cab company was at fault; also further that he did not want the jury to consider that testimony presented in support of his argument as indicating who was right or wrong; and that the testimony was not admitted for that purpose and should not be used for that purpose.

During the final argument of counsel for Gottwald he stated that "sometimes a man who owns a taxi cab is at a certain legal disadvantage" and "sometimes they will try to buy peace; and if it costs him one hundred dollars for a lawyer and fifty dollars for settlement he may pay the fifty dollars. Those things occur"; also that "The Court has indicated to you by his ruling that the fact that Emmeck was paid is a matter which you can take into consideration, but it's not a matter that you can take into consideration in determining who's responsible here"; and further "Just what Mr. Gottwald paid to Mr. Emmeck I don't know. But after hearing the testimony, I'm inclined to tell him that I think he's been cheated a little bit."

While it is true that counsel, in arguing a case to the jury, is to be given much latitude, and that ordinarily "comments of counsel in the closing arguments on properly received evidence * * * [are] never error"[12] it does not follow that where evidence is received for a specific purpose that it can then be used in argument for some other purpose wholly foreign to the limited purpose for which it was received to the prejudice of a litigant.[13] However, in the instant case this is not the situation. Under the circumstances here we do

[12]Rappaport v. Boyer & Gilfillan Motor Co. 239 Minn. 477, 483, 59 N. W. (2d) 302, 306.

[13]See, Beer v. Martel, 332 Mo. 53, 55 S. W. (2d) 482; Amsinger v. Najim, 335 Mo. 528, 73 S. W. (2d) 214.

not think it was error for the court to permit counsel for Emmeck's argument to stand nor do we think Gottwald was prejudiced thereby. Neither do we agree with Gottwald's contention that counsel for Emmeck was guilty of misconduct in that even though his argument was made ostensibly for a proper purpose, its real purpose was to convey to the jury the thought that the settlement indicated Gottwald was to blame for the accident and that Emmeck was free from negligence. Moreover, the granting of a new trial for improper argument of counsel rests almost entirely in the discretion of the trial court and its action will not be reversed on appeal except for a clear abuse of the discretion.[14] From what has been said it follows that Gottwald is not entitled to a new trial because of the statements made in the final argument of counsel for Emmeck.

■ Plaintiff printed a supplemental record of 194 pages which was wholly unnecessary to the proper presentation of the merits of this appeal. Under Supreme Court Rule VIII(5) (222 Minn. xxxiv), the cost of printing this record will not be allowed as part of her disbursements.

Affirmed.

[14]Patton v. Minneapolis St. Ry. Co. 247 Minn. 368, 77 N. W. (2d) 433; Hardy v. Anderson, 241 Minn. 478, 63 N. W. (2d) 814; 14 Dunnell, Dig. (3 ed.) § 7102.