## EASTERN & WESTERN LUMBER CO. v. RAYLEY.

(Circuit Court of Appeals, Ninth Circuit.   December 2, 1907.)

### No. 1,384.

**1. MASTER AND SERVANT—LOGGING RAILROAD—DUTY OF CARE IN CONSTRUCTION AND OPERATION.**

The owner of a private logging railroad is not held to the same degree of care in its construction and operation as is required in case of an ordinary railroad carrying freight and passengers for hire.

**2. APPEAL AND ERROR—REVIEW—WEIGHT OF EVIDENCE.**

The question of the weight of evidence is not a subject for review by a federal appellate court in a case tried to a jury, where the evidence was conflicting.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appeal and Error, §§ 3935–3997.]

**3. MASTER AND SERVANT—INJURY TO SERVANT—ASSUMPTION OF RISK—QUESTION FOR JURY.**

Where plaintiff, who was injured by the turning over of an engine on which he was working as fireman on a spur of a private logging road by reason of the breaking of the ties, accepted the employment for the day with knowledge of the character of the road, that the spur had been temporarily built for the purpose of taking out certain logs, that it had never been used, and that it would be subjected to an unusual strain on that day, and had walked over it, the question whether or not he assumed the risk of the injury which resulted was one for the jury.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 1068–1088.

Assumption of risk incident to employment, see note to Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.]

In Error to the Circuit Court of the United States for the District of Oregon.

R. W. Wilbur and Williams, Wood & Linthicum, for plaintiff in error.

Thos. O'Day, for defendant in error.

Before GILBERT and ROSS, Circuit Judges, and HUNT, District Judge.

ROSS, Circuit Judge.   The accident for which the defendant in error, who was the plaintiff in the court below, got a verdict and judgment there for personal injuries, occurred on a spur of a logging road which was built and operated by the plaintiff in error for its own use in getting logs out of the forests.   To such a road the rules applicable to an ordinary railroad do not apply, as was held by us in Demko v. Carbon Hill Coal Co., 136 Fed. 162, 69 C. C. A. 74, and as has been held by other courts.   See Williams v. Northern Lumber Co. (C. C.)

113 Fed. 382; Wade v. Lutcher & Moore Cypress Co., 74 Fed. 517, 20 C. C. A. 515, 33 L. R. A. 255.

One of the defenses set up in the answer of the defendant was the following:

"That the railroad, at the point where the said plaintiff was injured, was a temporary railroad, which had been built by the said defendant into a log rollway of the said defendant for the purpose of hauling out certain logs, and that the said plaintiff knew that the said railroad was not a permanent railroad, but had only been built temporarily for the purpose of hauling out said logs at the rollway above described; that the said plaintiff, being aware of the manner in which the said railroad was constructed, the manner in which the stringers were laid down, the ties placed upon the same, and the rails of the said ties, and also being aware of the temporary nature of the said road, and of the manner in which the said trains on the said road were conducted, did, on the 23d day of April, 1905, without any order or request from the said defendant, enter into and upon the railroad locomotive and logging engine on the said road, which said engine turned over, causing the injury to the plaintiff complained of; but that the said plaintiff, being aware of all the said conditions, assumed all of the risks and dangers of entering into and riding in said engine, which same was a place where the said plaintiff had not been ordered, and where the plaintiff was not called upon to be, by virtue of any employment whatsoever for the said defendant."

These averments were put in issue by a reply on the part of the plaintiff. One of the other issues made by the pleadings was whether the plaintiff in the action was, as alleged by him, employed by the defendant to serve as fireman on the engine on the day of the accident, or whether, as alleged by the defendant, the plaintiff went upon the engine without any order, permission, or request of the defendant, and only for his own convenience and pleasure. While the plaintiff in error concedes that there is some conflict in the evidence in respect of that issue, its counsel argues at length and with seeming earnestness that the evidence is so overwhelmingly in its favor that the judgment should be reversed on that ground. In regard to that point it is enough to say that we do not sit to determine the weight of conflicting evidence. That is the sole province of the jury in cases tried with a jury.

But the alleged assumption of risk by the plaintiff to the action presents a question that we have to decide, for the court below in its instructions expressly withdrew from the jury the defense set up in the defendant's answer in respect to that matter, saying:

"But I instruct you that there has been no evidence adduced in this case from which it can be reasonably inferred that plaintiff assumed any risk or hazard of his employment, if employed in the capacity he alleges in his complaint, other than such as was ordinarily incident to such employment, and you will therefore dismiss from your minds the consideration of the second defense; that is, of whether plaintiff knew of the condition of the roadbed, and therefore assumed the risk of working upon such locomotive engine."

To that instruction the defendant reserved an exception at the time and has here assigned it as error. The testimony of the plaintiff himself shows that he knew that the spur on which the accident occurred was a temporary structure, as all such spurs are, built only for the purpose of getting the logs out of that particular part of the forest; that he himself was regularly employed by the defendant, and had been for months, in running a donkey engine on a line with a similar spur but a short distance from the spur in question; that the accident occurred

on Sunday, when all of the donkey engines except that at the new spur were idle, and where the people from the different camps had gathered —it having been previously announced that a record run of logs would be there made at that time; that he left his camp about 7 o'clock in the morning, and walked up the logging road to the new spur, thinking he might get a day's work, and walked on and about the spur until about 8:40 o'clock, when the superintendent of the road asked him to serve as fireman on the engine that day, which he agreed to do; that at that time the road was blocked with logs, although at the time he first got up there in the morning there were but a few logs on it; that one train load of logs was taken safely over the road, and that when the second train load had gone about 50 yards on the new spur some of the ties broke and the engine turned over, inflicting the injuries upon him for which he sued. Not only does it appear from the plaintiff's own testimony that he was familiar with the fact that the road in question was but a temporary structure, not intended for general business or for that of an ordinary railroad, and that the particular spur where the accident occurred was new and had never before been used, and that unusual strain was going to be put upon the road, which he himself walked over and saw, in an attempt to make a record run of logs, but the defendant introduced a witness, John Harrison Neap, who swore that before the plaintiff went upon the locomotive he said to him (the witness):

"Johnny, some one is going to get hurt here to-day; and I am going to get out of here."

In view of the evidence in the case, we think the jury should have been allowed to pass upon the question of assumption of risk by the plaintiff, and that the court erred in withdrawing that defense from its consideration. Allusion has already been made to the case of Demko v. Carbon Hill Coal Co., 136 Fed. 162, 69 C. C. A. 74, in which we held that a company is "not to be held to the same accountability in constructing a logging road used solely for its own purpose, and on which no freight or passengers are carried, that would apply to the case of an ordinary railroad." In Wade v. Lutchner & Moore Cypress Lumber Co., 74 Fed. 517, 519, 20 C. C. A. 515, 33 L. R. A. 255, the company established, built, and operated a logging railroad to be used in connection with a sawmill for the purpose of bringing logs from the lands of the company to the mill, and after operating the railroad for some time made a verbal lease to the firm of Baptiste & Sons, with whom there was a contract to cut the logs in the swamp belonging to the company and deliver them at the sawmill, under which verbal lease the entire railroad, including engines and cars was turned over to be operated, and was thereafter operated by Baptiste & Sons under their sole direction and control. While the railroad was operated by Baptiste & Sons, their employés and other persons traveling between the river and the swamp traveled on the railroad without charge, although about two months before the accident there in question, in which Hampton Wade (for whose death the action was brought) was killed, the firm of Baptiste & Sons instructed the engineer who had charge of the locomotive and train running on the road not to allow the people to ride on that

train unless they were employés of Baptiste & Sons, employed in running the road. The deceased was a blacksmith employed by Baptiste & Sons, but not for the purpose of running and operating a railroad. He was killed by the derailment of a train upon which he was riding at the time with some other persons, employés of Baptiste & Sons. There was evidence tending to show that at the time of the accident the railroad track, engines, and cars were in bad order, and that the train was being run at a very high rate of speed; the general tendency of the case showing that the derailment was probably caused by bad track, dilapidated engines, and high speed combined. There was no evidence tending to show the condition of the track, cars, and engines at the time Baptiste & Sons took possession. There was evidence tending to show that at the time of the accident the engineer had left his engine in charge of a fireman, and in company with the deceased was occupying a dangerous position upon the tool car, which car was shown to contain a tank of water and a box of tools, and a bench on which persons were accustomed to ride when using the road. The Circuit Court of Appeals for the Fifth Circuit approved this instruction given by the trial court:

"That under the uncontradicted facts in this case, and under the proof made by the plaintiff herself, this road was not a public carrier, either under the Constitution of this state or any other law. It is a private railroad, built, as shown by the plaintiff herself, upon the private lands of this defendant company, for its own private purposes and business in connection with its sawmilling operation. I again repeat to you that it is not a public carrier, and therefore the law which applies to the obligations and duties of public carriers does not bear upon the case which is now presented for your consideration."

Even in a case of an ordinary railroad, Campbell, C. J., in deciding the case of Michigan Central Railroad Co. v. Austin, 40 Mich. 250, said, for the Supreme Court of Michigan:

"Austin was a switchman, employed daily at this place, and with every means of knowledge of the track possessed by anybody. He knew that the track was rough, and that defective rails were often put into the side tracks, which were not used for general business. He must have known that a road which was thus rough and uneven would entail serious risks on any one standing on such a narrow footboard, unless he held onto the support provided. Moreover, the whole fault, if there was any fault in the condition of this track, was due to the neglect, as he himself testifies, of the trackmen, who were engaged in the same common service with himself. The risk of such a track was one of the ordinary risks connected with his employment. I do not think the evidence tends to show that it is negligent for a railroad company to use rough materials for its yard lines; and, whether it was or not, Austin knew the ways of the road and ran the risks."

The judgment is reversed, and the cause remanded to the court below for a new trial.