ALDER CO. v. FLEMING.

(Circuit Court of Appeals, Ninth Circuit. February 17, 1908.)

No. 1,418.

1. DEATH—STATUTES—CONSTRUCTION.

Act Mont. 1872 (Comp. St. 1887, div. 5, § 981), created a cause of action for wrongful death, and section 982 required such action to be brought by and in the name of the personal representative of the deceased persons, that the amount recovered should be for the exclusive benefit of the widow and next of kin, and that the damages should be in such sum as the jury deemed just and fair compensation with reference to pecuniary injuries resulting from the death to the wife and next of kin of the deceased, not exceeding $20,000. Code Civ. Proc. 1887, § 14, provided that, when death resulted from wrongful act, the deceased person's heirs or personal representatives might maintain an action therefor, and that in such action such damages might be given as under all the circumstances were just; and Code Civ. Proc. 1895, § 579, contained the same provision. *Held*, that Code Civ. Proc. 1887, § 14, was not intended merely to prescribe who might bring an action created by the act of 1872, nor did section 579 take away any of the causes of action growing out of the death of a deceased person, but that such section preserved the right of action created by the act of 1872, and was sufficiently broad to create a liability, though none existed at common law.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 15, Death, § 11.]

2. SAME—CONSTRUCTION.

Code Civ. Proc. Mont. 1895, § 579, declares that when the death of one person, not being a minor, is caused by the wrongful act or neglect of another, his heirs or personal representatives may sue for damages against the person causing the death, and recover such damages as may be just under all the circumstances. *Held*, that such section did not create two different measures of liability, one to the deceased and the other to his heirs, but that there could be only one recovery, which must embrace all damages, whether the action is by the personal representative of the deceased or by his heirs.

3. MASTER AND SERVANT—DEATH OF SERVANT—ASSUMED RISK—QUESTION FOR JURY.

In an action for death of a servant, evidence *held* to require submission to the jury of the question whether decedent assumed the risk of the incompetency of a fellow servant, by whose alleged negligence decedent was killed.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant §§ 1068–1088.

Assumption of risk incident to employment, see note to, Chesapeake & O. R. Co. v. Hennessy, 38 C. C. A. 314.]

In Error to the Circuit Court of the United States for the District of Montana.

George F. Shelton, W. M. Bickford, and W. H. De France, for plaintiff in error.

John A. Shelton, John N. Kirk, and R. L. Clinton, for defendant in error.

Before GILBERT and ROSS, Circuit Judges, and DE HAVEN, District Judge.

ROSS, Circuit Judge. This action was brought by the widow of William F. Fleming, deceased, as administratrix of his estate,

159 F.—38

to recover damages because of his death. The action was tried with a jury, which returned a verdict in favor of the plaintiff for $6,000, for which judgment was entered. The case is brought here upon writ of error by the defendant below.

The deceased lost his life while working for the Alder Company in the Kearsage mine, in Madison county, Mont., at a place therein reached by a tunnel about 400 feet long, from which a shaft had been sunk 150 feet, and from that a drift 67 feet in length to tap the vein, so that at the time of his death he was working on a level 150 feet below the tunnel. Over the mouth of the tunnel there had been erected years before a wooden building in which were the boilers that furnished steam to run the hoisting engine, a blacksmith shop, a sawmill, and a storeroom, for the storage of material used in the mine. The track running through and out of the tunnel passed through this building, and over the track cars carrying ore and waste from the mine ran. At the time of the accident Fleming was on the night shift. He had worked in the mine for about six months, and was necessarily familiar with the presence of the building and its character; for he passed through it in going to and coming from his work. Early in the morning of the day he lost his life, a fire was discovered in the building at the mouth of the tunnel, and immediately upon its discovery the foreman of the mine went up the hill to a shaft designated as the "Apex Shaft," which had been sunk by another company about 600 or 700 feet above the mouth of the tunnel, and which connected other stopes with the tunnel in the Kearsage mine. This shaft was covered with planking in which were fitted doors, and those doors the foreman opened. The decedent lost his life by reason of inhaling the smoke and gas from the burning building that descended into the mine.

Among the grounds alleged for a recovery were the maintenance by the company of the building over the tunnel, in violation of a statute of the state of Montana prohibiting the erection of such a building within 50 feet of the mouth thereof, and the employment by the mining company of one Charles Bradshaw as fireman, assistant engineer, and watchman in and about the mine, who, the complaint alleged, was by reason of his excessive use of intoxicating liquors incompetent and unfit for such employment, and through whose drunkenness at the time of the accident it was alleged the fire occurred which caused the death of the deceased. The complaint also alleged the heirs of the deceased to be his widow, the plaintiff, William Fleming, aged 24 years, James Fleming, aged 21 years, Patrick Fleming, aged 17 years, Mary Ann Harrington, aged 27 years, Julia Daly, aged 25 years, and Annie Fleming, aged 11 years; that at the time of the death of William F. Fleming the deceased had an earning capacity of $100 a month; that the plaintiff and the said minor children were wholly dependent upon him for support and maintenance; and that by his death the plaintiff suffered damage in the sum of $20,000, for which sum she prayed judgment and costs of suit.

At the trial the plaintiff was permitted, over the objections of the defendant, to give evidence as to who the heirs of the deceased were, and as to the amount of pecuniary support that was given by the de-

ceased to his widow and minor children, and also testimony as to the expectancy, according to the life tables, of one of the age of Fleming at the time of his death, and the cost of an annuity furnishing $100 a month. The grounds of these objections were the contention on the part of the defendant that the personal representative of the deceased had no authority in law to maintain an action for the benefit of the heirs; that the right, if any, of the plaintiff to recover as a personal representative of the deceased, was limited in extent to the damage suffered by the estate by reason of the death; and that neither the pecuniary damage suffered by the heirs, nor the injury to their feelings, the loss of the society of the deceased, nor evidence of the cost of an annuity based on his expectation of life, were proper to be considered in an action brought by his personal representative. Upon the close of all of the evidence in the case the court below instructed the jury that, in so far as the alleged negligence in the maintaining of the building by the company at the mouth of the tunnel was concerned, the deceased had assumed the risk thereof, and that no recovery could be had on that ground.

The testimony was, without substantial conflict, to the effect that Bradshaw was a drunkard; but the court left it to the jury to say whether his incompetency by reason of his drunkenness was the proximate cause of Fleming's death, and whether his drunkenness and consequent incompetency were known to the deceased under such circumstances that he necessarily assumed the risk thereof by continuing in his employment with Bradshaw as a fellow servant; the defendant's answer having taken issue as to the alleged drunkenness of Bradshaw being the proximate cause of the death of the deceased, and also having affirmatively alleged that the deceased assumed the risk of the unfitness and incompetency of Bradshaw, and therefore could not recover. The answer also put in issue all of the other material averments of the complaint, and the plaintiff's reply took issue with the affirmative allegations of the answer. The defendant also objected at the threshold of the trial to the introduction of any testimony on the part of the plaintiff, on the ground that the complaint failed to state a cause of action, in that at the time of the accident in question there was no law of the state of Montana authorizing or permitting an action to be maintained for the death of a person by his personal representative or heirs.

It is conceded that no such action could be maintained at common law; but many of the states have enacted a statute authorizing an action for damages in such cases. Montana unquestionably did at one time; but for the plaintiff in error it is contended that prior to this accident that statute was repealed, and that no such action was ever thereafter authorized by the state of Montana. It appears that in January, 1872, the Legislative Assembly of the territory of Montana enacted a law similar to the English statute known as "Lord Campbell's Act"; section 981 of the Montana statute reading as follows:

"Whenever the death of a person shall be caused by a wrongful act, neglect, or default, and the act, neglect or default is such as would (if death had not ensued) have entitled the party injured to maintain an action and recover damages in respect thereof, then and in every such case the person who, or the corporation or company which, would have been liable if death had not

ensued, shall be liable for an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to felony."

Section 982:

"Every such action shall be brought by and in the name of the personal representative of such deceased persons, and the amount recovered in every such action shall be for the exclusive benefit of the widow and next of kin of such deceased person, and shall be distributed to such widow and next of kin in the proportion provided by law in relation to the distribution of personal property left by persons dying intestate; and in every such action the jury may give such damages, not exceeding twenty thousand dollars, as they shall deem to be fair and just compensation with reference to the pecuniary injuries resulting from such death to the wife and next of kin of such deceased person; provided that every such action shall be commenced within three years after the death of such person."

Comp. St. Mont. pp. 911, 912.

On the 16th of February, 1877, the Legislative Assembly of the territory of Montana enacted a Code of Civil Procedure, section 14 of which is as follows:

"Where the death of a person, not being a minor, is caused by the wrongful act or neglect of another, his heirs or personal representatives may maintain an action for damages against the person causing the death, or if such person be employed by another person who is responsible for his action, then also against such other person. In every action under this and the preceding section, such damages may be given as under all the circumstances of the case may be just."

Comp. St. Mont. 1887, p. 62.

These provisions of the statutes of Montana remained in force until the enactment of the present Codes of that state, which, under their provisions, took effect July 1, 1895. Section 3482 of the latter Codes is as follows:

"No statute, law, or rule is continued in force because it is consistent with the provisions of the Code on the same subject; but in all cases provided for by this Code, all statutes, laws, and rules heretofore in force in this state, whether consistent or not with the provisions of this Code, unless expressly continued in force by it, are repealed and abrogated. This repeal or abrogation does not revive any former law heretofore repealed, nor does it affect any right already existing or accrued or any action or proceeding already taken, except as in this Code provided; nor does it affect any private statute not expressly repealed."

Section 3483 of the present Code of Civil Procedure of the state of Montana is in this language:

"Subject to the provisions of the next preceding section [section 3482 above quoted], and section 3455 and section 3456, the following statutes and parts of statutes are hereby repealed, to wit: * * * Also section 981 and section 982 * * * of the Compiled Statutes."

Section 3455, here referred to, reads as follows:

"No action or proceeding commenced before this Code takes effect, and no right accrued, is affected by its provisions."

And section 3456:

"When a limitation or period of time prescribed in any existing statute for acquiring a right or barring a remedy, or for any other purpose, has begun to run before this Code goes into effect, and the same or any limitation

is prescribed in this Code, the time which has already run shall be deemed part of the time prescribed as such limitation by this Code."

Section 14 of the act of February 16, 1877, above quoted, was re-enacted in the Code of Civil Procedure of February 14, 1895, and is found in section 579 thereof in these words:

"When the death of one person, not being a minor, is caused by the wrongful act or neglect of another, his heirs or personal representatives may maintain an action for damages against the person causing the death, or if such person be employed by another person who is responsible for his conduct, then also against such other person. In every action under this and the preceding section such damages may be given as under all the circumstances of the case may be just."

The argument for the plaintiff in error is that under the territorial legislation of Montana the cause of action for the death of a person was created solely by the act of 1872, above quoted; that the effect of the act of February 16, 1877, was only to prescribe who might sue for such damages; and that when the state of Montana, by the adoption of its Codes in 1895, repealed sections 981 and 982 of the Compiled Statutes, being the provisions of the act of 1872, and enacted only the above-quoted provisions of section 579 of the Code of Civil Procedure, it in effect took away any and all causes of action growing out of a death of a person. We are unable to give that construction to section 579 of the Code of Civil Procedure of the state. In the first place, we do not agree with counsel for the plaintiff in error that the sole purpose of section 14 of the act of 1877 was to prescribe who might bring an action growing out of the cause of action created by the act of 1872; for the latter act, as will have been seen by section 982 of the Compiled Statutes, provided, among other things, that "in every such action the jury may give such damages, not exceeding twenty thousand dollars, as they shall deem to be fair and just compensation with reference to the pecuniary injuries resulting from such death, to the wife and next of kin of such deceased person," which provision was so far changed by the act of February 16, 1877, of the territorial legislation as to declare that in such action "such damages may be given as under all the circumstances of the case may be just."

When the state of Montana came to adopt its system of Codes in 1895, it enacted upon the subject in question the precise provision that had theretofore been adopted by the state of California in section 377 of its Code of Civil Procedure, under and by virtue of which the Supreme Court of California had theretofore, and since has, sustained a number of actions growing out of the death of individuals. See Beeson v. Green Mountain M. C., 57 Cal. 20; McKeever v. Market Street Ry. Co., 59 Cal. 294; Cook v. Clay Street Hill Ry. Co., 60 Cal. 609; Nehrbas v. Central Pacific Co., 62 Cal. 336; Wolford v. Lyon Gravel Mining Co., 63 Cal. 484. No decision of the Supreme Court of Montana to the contrary being brought to our attention, we are of the opinion that the statute of that state declaring that the heirs or personal representatives of a deceased adult person may maintain an action for damages for the death of such person when caused by the wrongful act or negligence of another, in which action such damages may be given as under all the

circumstances of the case may be just, is sufficiently broad and comprehensive to create a liability, though none existed at common law.

Nor is one so made liable for the death of another under two differ-ent measures of liability, one to the deceased and the other to his heirs, as is further contended by the plaintiff in error. Northern Pacific Railroad Co. v. Adams, 192 U. S. 440, 24 Sup. Ct. 408, 48 L. Ed. 513. Whether such action be brought, as in the present case, by the personal representative of the deceased, or by his heirs, there can be but one re-covery, and that may, by the express terms of the statute in question, embrace such damages "as under all the circumstances of the case may be just."

There only remains to consider whether the court below erred in leaving it to the jury to determine from all the facts and circumstan-ces of the case whether the incompetency of Bradshaw, by reason of his drunkenness, was the proximate cause of Fleming's death, and whether his drunkenness and consequent incompetency were known to the de-ceased under such circumstances that he necessarily assumed the risk thereof by continuing in his employment with Bradshaw as a fellow servant. That the court below did not err in either of these respects is, we think, well illustrated by the case of Northern Pacific Railroad Company v. Mares, 123 U. S. 710, 8 Sup. Ct. 321, 31 L. Ed. 296. That case was brought by Mares against the railroad company to recover damages for personal injuries alleged to have been sustained by him while in the employ of the company, by reason of its alleged negligence. Upon the conclusion of all of the evidence the defendant moved the court to dismiss the action, which motion was denied, and thereupon the defendant requested an instruction to the jury to return a verdict for the defendant, which request was likewise refused. There was evi-dence in the case tending to show that one Bassett had been in the em-ploy of the defendant as engineer in the yard where the plaintiff was injured for about a year; that during that time he had by his conduct frequently shown his negligence, recklessness, and unfitness for the place; that complaints had at different times been made of his negli-gent and reckless conduct to the defendant's representatives at Fargo; that, notwithstanding such complaints, he was retained in the same serv-ice, except during short intervals, when he had been discharged two or three times for misconduct; that the plaintiff at the time of the injury had only been in the employ of the defendant about two weeks, and only about one week of that time with Bassett; that he worked as night brakeman; that on the night of the injury, and about 15 or 20 minutes before the accident, the yardmaster called up the switching crew, who had been asleep for a short time, and ordered plaintiff to direct Bassett to move his engine so as to commence switching cars at the point named; that they were in haste to get ready for a train soon to come in from the East; that the plaintiff, as directed by the yardmaster, urged Bassett to move promptly, on account of which angry words passed between them; that thereafter, while under the direction of the yardmaster, they were backing some cars, and while he was standing on top of and near the rear end of the head car, which was the farthest from the engine, the plaintiff gave a signal to the en-

gineer to back seven or eight car lengths; that it was the duty of the plaintiff to give such signals and of the engineer to obey them, and to continue backing until he was signaled to stop; that when he had backed about three car lengths, without any warning to the plaintiff, and without any reason or necessity therefor, he very suddenly, recklessly, and negligently reversed his engine without shutting off the steam, giving the train so sudden and violent a jerk as to throw the plaintiff off and inflicted the injuries complained of. The Supreme Court said:

"We think the court was clearly right in refusing to give the peremptory instructions asked for by the defendant, that if the plaintiff knew, or even had opportunity of knowing, before his fall from the car in question, that Bassett was an unfit or unsafe man to run the engine in question, it was the plaintiff's duty absolutely to refuse to work with him any longer, and that his failure to do so would prevent him from recovering in this suit. The duty of the plaintiff under such circumstances is not to be determined by the single fact of his knowledge of the danger he incurred by continuing to serve with a co-employé known by him to be an unfit and incompetent person. It was enough for the court to say, as it did, that a failure on the part of the plaintiff to refuse to work, in view of that knowledge on his part, might be negligence on his part. The qualification was correct—that it was for the jury to say,,from all the attending circumstances, whether his failure to do so was in fact contributory negligence. A suitable judgment on that question can only be reached by carefully weighing the probable consequences of both courses of conduct, and it might well happen that even at the risk of injury to himself, occasioned by the unskillfulness of his co-employé, the plaintiff might still reasonably be regarded as under a duty not suddenly and instantly to refuse to continue in the conduct of the business of his principal. Many cases might be conceived in which the latter course might even increase the danger to the plaintiff himself and entail great injury and loss to others."

The judgment is affirmed.