NORTHERN PAC. RY. CO. v. LUNDBERG.

(Circuit Court of Appeals, Ninth Circuit. February 14, 1910.)

No. 1,766.

1. MASTER AND SERVANT (§ 271*)—ACTION FOR INJURY TO SERVANT—INCOMPETENCY OF FELLOW SERVANT—EVIDENCE OF MASTER'S KNOWLEDGE.

In an action by a brakeman against a railroad company to recover for an injury received while coupling an engine to a car standing on a spur track, alleged to have been caused by the negligence of the engineer who it was alleged was incompetent and reckless to defendant's knowledge, defendant's records showing that the engineer had been several times suspended and reprimanded for acts of carelessness or incompetence were competent evidence in behalf of plaintiff on such issue.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 930; Dec. Dig. 271.*]

2. MASTER AND SERVANT (§§ 288, 289*)—ACTION FOR INJURY TO SERVANT—QUESTIONS FOR JURY.

The question of the contributory negligence of a brakeman who was injured while coupling a moving engine to a car on a spur track, and also the question whether his injury resulted from a risk of his employment, held properly submitted to the jury under the evidence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1068–1132; Dec. Dig. §§ 288, 289.*]

In Error to the Circuit Court of the United States for the Western District of Washington.

Action by John P. Lundberg against the Northern Pacific Railway Company. Judgment for plaintiff, and defendant brings error. Affirmed.

George T. Reid and J. W. Quick, for plaintiff in error.
Frank E. Vaughan, for defendant in error.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Before GILBERT and MORROW, Circuit Judges, and HUNT, District Judge.

HUNT, District Judge. This action was brought by John P. Lundberg, who is the defendant in error here, but whom we will call plaintiff, against the Northern Pacific Railway Company, to be herein called defendant, for damages arising from an injury to his left foot, necessitating its amputation, sustained by him while in the employ of the defendant company as a brakeman, while making a head-end coupling of an engine with a freight car located on a spur track, known as "Bouten-Perkins Spur," on the line of the defendant railway company between Kalama and Yacolt, in the state of Washington. The plaintiff's cause of action is based upon the alleged negligence of the defendant company in failing to provide an engine and cars equipped with safe and proper coupling appliances and apparatus and in permitting the engine to be operated by a negligent, reckless, and incompetent engineer, of whose incompetence the defendant company had notice and knowledge. The defendant denies negligence on its part, alleges that the plaintiff was guilty of contributory negligence, and that the facts, circumstances, and conditions which occasioned the accident were incident to and necessarily connected with his work as a brakeman, the risk of injury from which the plaintiff assumed when he entered upon and remained in the defendant's employment.

Just prior to the accident the plaintiff had uncoupled the engine from the train, and had unlocked and thrown the switch for the purpose of removing two cars loaded with ties, standing on the spur, to make room for four gondolas, or coal cars, which were to be cut out of the train and left on the spur. As the engine passed the plaintiff proceeding on the spur towards the cars, the plaintiff stepped on the pilot of the engine, and attempted with his hands to move the drawhead into position at the front of the engine, so as to make the coupling when the engine should come in contact with the drawhead of the car. The drawhead of the engine weighed from 100 to 125 pounds, worked very hard, and plaintiff was unable to adjust it with his hands because of the difficulty of moving it. The drawhead had a lateral play of about six inches, three inches each way from the center, in order that it might be used on a curve, and it appears that the spur track on which the cars were standing was slightly curved. The plaintiff testified that the engine was going at too high a rate of speed, and that as he approached the car, finding that the engine was going too fast, he put out his hand and signaled the engineer to slow down, to which the engineer gave no heed. The plaintiff was standing on the right side of the engine, with his back to the engineer, on a cleat about two feet long and four inches wide, bolted onto the bottom at the back or rear of the pilot, and was holding onto a rod with his left hand. When within 15 or 20 feet of the cars on the spur, being unable to move the drawhead with his hands and push it into position, the plaintiff placed his left foot back of the jaw or head of the drawhead to shove it over with his foot in case it was necessary to do so in order to make the coupling. His object was to have the drawhead in place when he got

within two feet of the car, but, the engineer failing to slow down when the slow signal was given, it came in contact with the car sooner than the plaintiff had anticipated, and the force of the contact kicked up the drawhead on the engine, causing plaintiff's foot to bounce up and off the drawhead, and the cars to roll a distance of from two to five feet—a coupling not having been effected—and his foot came down between the drawheads just as the engine and the car came together again, crushing it between the two drawheads.

Upon the trial of the case the plaintiff sought to prove that the engineer in charge of the locomotive on which he was injured was negligent, unskillful, reckless, and incompetent, and that the defendant company had been negligent in retaining the engineer after it had notice and knowledge of his want of skill and competency. For this purpose the plaintiff offered, and, over the objection of the defendant, was permitted to read, in evidence a record kept by the defendant company of complaints and charges which had been preferred against the engineer in question for various delinquencies in the discharge of his duty. The record, so offered and admitted, disclosed that Heasley, the engineer, entered the employ of the defendant company on November 3, 1899; that in December, 1899, he was given a 30 days record suspension for carelessness in starting a train, and again during the same month a 10 days record suspension for attempting to take water at a tank without cutting his engine from the train. In October, 1900, he was given a 60 days record suspension for making an agreement with the crew of an opposing train that he met on the main line not to make any official report of it, a 30 days record suspension in January, 1901, for poor judgment in making a stop at a water tank, and in August, 1902, a reprimand for derailing a car. In December, 1902, he was given a five days record suspension for running his engine off an open switch, and in August, 1902, he was reprimanded for allowing unauthorized persons to ride in his engine. In April, 1904, he was given a 60 days record suspension for damage to a car on the Kalama Transfer Boat, and in March, 1908, a 30 days suspension for the derailment of an engine at Richfield. In addition to the record just referred to, there was introduced a letter from the defendant company to Engineer Heasley, dated September 1, 1902, reading as follows:

"On August 23d a car was derailed on the transfer boat while train was pulled on. The car was pulled the full length of the boat with truck off the track, although stop signals were given you as soon as the car went off. You were given signals by the use of whistle on road engine which was also on the boat. Apparently no attention was paid to these signals. Derailment caused bad delay to several trains. Investigation shows clearly that you were not keeping proper lookout for signals or using caution such as you should have done in doing work at a place requiring extra precaution. It is expected that you will be more careful in the future."

And again, another letter, dated April 18, 1904, to the same engineer, which read:

"On Sunday, April 10th, while placing first section of train 1 on transfer steamer at Kalama, the forward truck of sleeper Helena was pushed off the stock block at the end of the boat, breaking same and air connections and knocking the track off the center, making it necessary to leave the sleeper on the boat and transfer the passengers. This accident reflects seriously upon the

service, and indicates carelessness on the part of employés. Careful investigation has been had, and it is found that the accident was caused by your failure to obey signals which were given by person from your side of the engine and which you should have seen if you had been looking for them. Failing to see stop signal. It is your duty to stop when the man giving you signals disappeared from view. This being the case, the conclusion is reached that you are responsible for the accident. This is a very serious matter, and you are well aware of the responsibility resting upon men doing the work at that point, and that men are only assigned to such duty because it is expected that they will realize the increased responsibility attendant upon such a position and act accordingly. As you seem to fail to fully realize this the only action possible has been taken; that is to transfer you to some other run with the expectation that your service in such a capacity will demonstrate that you have learned a lesson from this occurrence. For improper service as outlined above a suspension of 60 days has been entered against your record."

The action of the court below in admitting this record and these letters, and the refusal of the court afterwards on motion of defendant to strike out this evidence, are assigned as errors, and the case of Southern Pacific Co. v. Hetzer, 135 Fed. 272, 68 C. C. A. 26, 1 L. R. A. (N. S.) 288, is cited to sustain the defendant's contention. In that case Hetzer, the plaintiff in the court below, was the rear brakeman of a train of 22 cars which one Delano, the engineer in charge of the train, was backing into a gravel pit. As the train approached a switch, which it was Hetzer's duty to throw, he gave the slow signal, and his fellow brakeman gave the stop signal to the engineer. The engineer applied the air, Hetzer fell to the track, and one of the wheels of the rear car passed over his leg, after which the train came to a stop. He sued the defendant company for negligence in employing and keeping in its employ an incompetent engineer. For the purpose of proving the alleged incompetency of the engineer, Delano, the plaintiff, Hetzer, was asked by his counsel on the trial of the case if there was any other occurrence of sudden stopping or jerking of the train while Delano was in charge of it as the engineer during the day of the accident, and, over the objection of the defendant, the plaintiff was permitted to testify that about three hours before the accident Delano stopped his train in a very rough manner, causing the plaintiff to stagger. Evidence of another act of a similar character on the part of the engineer was admitted in evidence over the objection of the defendant company. No attempt was made to bring home to the defendant any knowledge of the engineer's carelessness, and no showing was made either that Delano was habitually reckless and careless, so as to charge the defendant company with knowledge thereof, nor was it shown that the defendant company was aware, or had notice, of any acts indicating that the engineer had been reckless or careless on previous occasions, or that he was incompetent to discharge the duties of his employment. It was therefore held that the trial court committed error in admitting this testimony, in the absence of any showing of knowledge on the part of the company. But, in the discussion of the question presented in that case, the court distinctly states the rule to be well settled that prior acts of an engineer, showing want of care and indicating incompetence, are admissible in evidence where knowledge of such acts is brought home to such defendant company. The Court of Appeals said:

"Specific acts of negligence of which the master has notice are conceded to be admissible to prove incompetency and a general reputation for incompetence is admissible to show that the master by the exercise of reasonable care would have known of the incompetence of the servant. In the case at bar there was no evidence that the master knew, or that by the exercise of reasonable care it would have known, of the two specific acts of negligence, the evidence of the commission of which is here challenged, and the question is: Are specific acts of negligence of which the master has no notice admissible to prove the incompetence of his servant whom he has exercised due care to employ? *. * * Bearing in mind, now, that it is conceded that specific acts of incompetence of the servant, notice of which was brought home to the master before the accident, are admissible on the issue of his negligence in failing to discharge him, and that the question here is not whether acts known to the master, or so notorious that they ought to have been known, are admissible, but whether or not specific acts of which he had no notice or knowledge are competent to establish the incompetence of the servant, let us consider the authorities upon which counsel for the plaintiff rely."

A number of cases are cited by the court in its opinion, and to the same effect is the case of Conover v. Neher-Ross Co., 38 Wash. 172, 80 Pac. 281, 107 Am. St. Rep. 841. The defendant's objection, therefore, was not well taken, and no error was committed by the trial court in that respect.

The defendant company moved for a nonsuit, and, at the close of the case, for a directed verdict in its favor, on the grounds that there was no evidence of negligence on the part of the defendant, that the evidence showed contributory negligence on the part of the plaintiff, and that he assumed the risk of the injury sustained under the circumstances disclosed by the evidence. It is contended that the court committed error in denying these motions. The plaintiff had been in the employ of the defendant company as a brakeman approximately a year at the time of the accident, which occurred on Friday, June 14, 1907, and had worked a considerable portion of that time as a switchman in the company's yard at Vancouver. The engine used in removing the freight cars from the Bouten-Perkins Spur on that day had been used for switching purposes on the Sunday before in the yard at Vancouver, the plaintiff making the couplings necessary for that purpose. He noticed at that time that the drawbar or drawhead at the front of the engine was not in good working order, in that the front end of the drawhead was from 2 to 2½ inches lower than the rear end. It made it very hard to work the drawhead in moving it into position, and it made it necessary to run the engine with greater speed in order to effect a coupling than would have been required if the drawbar or drawhead had been in proper condition and repair. The plaintiff, however, made the couplings with the drawhead in that condition all day on the preceding Sunday in the Vancouver yard, but, on account of the difficulty in handling it, he would place it in such position so as to enable him to move it into place with his foot, as he did on the day of the accident, when approaching the car with which the coupling was to be made. He called the attention of a Mr. Ritchie, the foreman of the crew, and the person in charge of the switch yard at Vancouver, to the condition of the drawhead, and told him it was working entirely too hard. He had no occasion to use the engine again for the purpose of making a coupling until the following Friday, the day of the accident, and did not know that it was the same engine which had been used

in the yard on the Sunday before until he took hold of the drawhead for the purpose of placing it in position to make the coupling. Finding that the drawhead was still in the same condition in which he found it on the preceding Sunday, he gave the engineer the slow signal, which he expected would be observed. The engine was then within 15 or 20 feet of the car. The engine did not slow down, but the plaintiff says that some engineers will run their engines within five or six feet of a car and then stop and simply touch the drawhead in making the coupling, and, when he found that the engineer was not slowing down after the signal to do so had been given, he supposed that the engineer would follow that course. He had never worked with Heasley, the engineer, before the week during which the accident occurred, and he had no reason to suspect that his signal would not be heeded. He aimed to get the engine drawhead in position when within two feet of the drawhead of the car, but the engine was going too fast and came in contact with the drawhead of the car sooner than he had reason to expect. The plaintiff testified that the engine was going at the rate of at least six miles an hour, while the engineer and fireman say it did not exceed from three to four miles an hour. Both engine and car were equipped with automatic couplers, and a lever was running from the coupler to the side of the engine and also from the coupler to the side of the car with which a coupling could be made without going in between the cars, which levers were pulled, according to the testimony of Heasley, as follows:

"The proper way to adjust the drawhead is to place it in position with the hands just as Mr. Lundberg says he did, and then get out to the side of the car and adjust the knuckle by use of the lever which is for the purpose of binding the knuckle.

"Q. Is it necessary for the brakeman to be between the engine and car when making the coupling? A. No, sir. He should adjust his drawbar, and then step out to the side and make the coupling by use of the lever with which this and all automatic couplings are provided; and if he is on a curve, and it is necessary to change the position of the engine drawbar, he should stop the engine just before the couplings go together and adjust it in that way."

The plaintiff testified that, after he had given the signal to slow down and discovered that it was not complied with by the engineer, it would not have been possible for him to have left his place on the engine without great danger to himself, in view of the surrounding circumstances and the speed of the engine.

With reference to the rate of speed of the engine when approaching the car, the plaintiff says it was at least six miles an hour, while the engineer and fireman say it was not more than three or four miles an hour. The plaintiff testified that the engine struck the drawbar of the car twice, while the engineer and fireman say that the engine and car came in contact but once. Defendant produced a witness who had had many years of practical railroad experience, and who testified that, while it would not be careless for a brakeman to put his foot on the drawbar, yet he thought it would be careless for him to keep his foot there until the couplings came together; it being dangerous because of the jar. Such other differences as there may be in the testimony given by the witnesses are not important in the consideration of this case. The case is quite close, yet, after reading the whole testimony,

we are of opinion that the trial court did not err in refusing to direct verdict for the defendant.

The law is well settled to the effect that, whenever there is room for a reasonable difference as to the inference and conclusions that may be drawn from the facts, the case should be submitted to the jury. "Whether there has been contributory negligence on the part of the plaintiff is a question for the jury, under the same circumstances and subject to the same limitations as the question whether there has been negligence on the part of the defendant." 1 Thompson on Negligence, §§ 425, 426, and cases cited; Rochford v. Pennsylvania Co., 174 Fed. 81.

The question of assumption of risk also involved consideration of the facts and circumstances adduced upon the trial, and was properly submitted to the jury. 4 Thompson on Negligence, § 4657; Mason & O. R. Co. v. Yockey, 103 Fed. 265, 43 C. C. A. 228; Louisville & N. R. Co. v. Kelly, 63 Fed. 407, 11 C. C. A. 260; N. Y. & T. S. S. Co. v. Anderson, 50 Fed. 462, 1 C. C. A. 529; N. P. R. Co. v. Mares, 123 U. S. 710, 8 Sup. Ct. 321, 31 L. Ed. 296; Alder Co. v. Fleming, 159 Fed. 593, 86 C. C. A. 419; New England Tel. & Tel. Co. v. Butler, 156 Fed. 321, 84 C. C. A. 217; Eastern & Western Lumber Co. v. Ragley, 157 Fed. 532, 85 C. C. A. 296; N. P. R. Co. v. Herbert, 116 U. S. 648, 6 Sup. Ct. 590, 29 L. Ed. 755; Seewald v. Harding Lumber Co., 49 Wash. 658, 96 Pac. 221.

These authorities are decisive of the questions involved. The cases cited by the counsel for plaintiff in error have been read and carefully considered, but they are not applicable to the facts in the present record. We find no error, and the judgment of the Circuit Court must be affirmed.