## ANDERSON LUMBER CORPORATION v. LEHTO.

(Circuit Court of Appeals, Fourth Circuit.   July 5, 1922.)

No. 1961.

1. **Appeal and error** ⬅⟹1001(1)—**Finding for plaintiff conclusive, unless there is no evidence to sustain verdict.**

Where the jury found for plaintiff, he must be held to have maintained the issue on the question of fact involved, unless it appears that there is no evidence to support the verdict.

2. **Damages** ⬅⟹157(2)—**Evidence of matters subsequent to injury not admissible in mitigation under the general issue.**

In an action for personal injuries, defendant's treatment of, and dealing with, plaintiff subsequent to the injury, such as giving him free house rent, furnishing him supplies, payments on account of wages, etc., could not be proved in mitigation of damages under the general issue of not guilty, but should have been set up by special plea.

3. **Appeal and error** ⬅⟹692(1)—**Record should show what witness would have answered to questions excluded.**

Where defendant complains of the exclusion of evidence, the witness' answers should have been taken in the absence of the jury, and the record should show what the witness would have answered.

4. **Master and servant** ⬅⟹125(9)—**Evidence of notice to employer's representative of defect admissible.**

In an employee's action for injuries, evidence of notice to the employer's representative as to defective spurs on climbing irons was admissible, whether such notice was given by plaintiff or some one else.

5. **Master and servant** ⬅⟹125(9)—**Complaint to employer's representative of defect notice to employer.**

A complaint by a workman to his employer's representative of the defective condition of the spur of climbing irons was notice to the employer of the condition of the spur.

⬅⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**6. Master and servant ⬥⟹295(I)—Instructions held to cover defense of assumed risk.**

In action for injuries sustained by employee, whose duties required him to climb trees to fasten cable, and who fell because of defective climbing irons, instructions *held* to fully and properly cover the defense of assumed risk.

In Error to the District Court of the United States for the Eastern District of South Carolina, at Columbia; Henry A. Middleton Smith, Judge.

Action by Victor Lehto against the Anderson Lumber Corporation. Judgment for plaintiff, and defendant brings error. Affirmed.

Howard S. McCandlish and Lanneau D. Lide, both of Marion, S. C., for plaintiff in error.

J. Alfred Anderson, of Boston, Mass. (Francis H. Weston and H. N. Edmunds, both of Columbia, S. C., on the brief), for defendant in error.

Before KNAPP and WADDILL, Circuit Judges, and GRONER, District Judge.

WADDILL, Circuit Judge. This is an action at law, instituted in the court of common pleas for Marion county, S. C., to recover damages alleged to have been sustained by the defendant in error, hereinafter called the plaintiff, as the result of the negligence of the plaintiff in error, hereinafter called the defendant. The action was properly removed by the defendant into the District Court of the United States for the Eastern District of South Carolina, and by that court tried by jury on the 11th of November, 1921, and a verdict rendered in favor of the plaintiff, upon which·judgment was duly entered, and from which action this writ of error was sued out.

The alleged act of negligence on the part of the defendant was that, while plaintiff was in the employ of the defendant as a lumberman at its camp in Marion county, S. C., the defendant negligently and carelessly furnished him, without knowledge on his part of their defective condition, with a pair of defective climbing irons, in which the spurs were not properly fastened, and also with a defective rope and other defective appliances with which to work, and while plaintiff was acting as first rigger, as an extra man, and using the same on the trunk of a tree, some 40 feet from the ground, they broke and gave way, and he fell to the ground, sustaining serious and permanent injury, both physically and mentally.

Defendant says that the plaintiff assumed the risks·arising from the alleged defects in the instrumentalities with which he was to work, if such defects in fact existed, and of which he had knowledge at the time of entering the service, and with such knowledge continued in its employment.

A brief statement of the character of the work, and the circumstances under which the plaintiff received the injuries sued for will tend to a better understanding of the case.

John Rinto, a witness for the plaintiff, testified:

⬥⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

That the plaintiff was in the rigging gang as an extra man; "that there was a railroad in the woods, and a machine called a skidder. An iron mast was on the skidder, and a·cable carried from the mast to a tree 500 or 600 feet away, which is called the back mast. There are two cables, which are used to carry the logs to the skidder, and into the railroad cars. The cable was removed from place to place as the timber was cut. I was the rear rigger in 1916. When the trees were all cut, it was my duty to go up the tree, untie the cable, and drop it down. The first rigger went up the tree to fasten the cable to the back mast, and he used climbing irons on his feet. So did I. His climbing irons were furnished by the Anderson Company."

The witness, after identifying the spurs introduced in evidence as those used by plaintiff at the time of the accident, further testified in substance as follows:

That on Monday, May 1, 1916, Victor Lehto took the climbing irons that had been brought to the back mast by the second rigger, put them onto his feet, put the rope around the tree, around his waist, tied the knot, leaned against the rope, and threw the rope with his hands upwards behind the tree, and alternately digging or thrusting the spurs into the tree went up about 40 feet, shortened the rope, by opening the knot and pulling himself closer to the tree, and tied the knot. When he was fastening the cable, the hemp he was using broke. He loosened the rope around his body, tied the knot, and descended to the foot of the tree, where he was given new hemp by other employees. Without opening the knot in the rope around his body, he started to ascend again; his body was about 6 inches from the trunk of the tree at the foot of the tree. He climbed up to the height of 40 feet. The circumference of the tree was smaller there than at the foot of the tree, the rope was too long, and he was too far away from the trunk to do his work. He pulled himself closer to the trunk of the tree, put his left hand around the tree, took the loop of the rope into his teeth, and with his right hand opened the knot. Just as he got the knot opened, his right foot climber loosened, the spur turned to the left, slipped and gave away, and he lurched to the right and fell to the ground and broke his back.

The climbing irons had been in use for several years. When they were first brought to the works, the spurs were too long for use, and they were shortened by the Anderson Lumber Corporation in its blacksmith shop, heated, and opened at the rivet. The spur in the right climbing iron became loose, and was loose for several months. The spur turned only to the left, and the climbing irons could be used by one who knew the defect, by putting the weight on the heels. The right spurs will not hold, if the weight is put on the toe, or if they are thrust forward.

[1] The issues of fact are sharply drawn, the testimony being in direct conflict as to some of the more important questions; but, under the finding of the jury, the plaintiff must be held to have maintained the issue upon the question of fact, unless it appears that there is no evidence to support the verdict. A careful perusal of the entire testimony leaves little doubt on this question, and that the jury was entirely warranted in its findings, and that the plaintiff sustained injury without fault on his part, and because of the defective appliances of the defendant, of which he had not been warned, and had neither knowledge as to their condition, nor opportunity of ascertaining the same. The plaintiff was horribly hurt, his spine actually severed, and the lower part of his body paralyzed, causing him to waste away, and rendering him totally unfit for work.

The defendant makes sundry assignments of error to the action and judgment of the court, which may be summarized as follows: (1) To the action of the court in refusing to admit testimony in mitigation of damages; (2) in the admission of testimony as to complaint having been made to the defendant as to the defective condition of the climbing iron; and (3) to the action of the court in refusing certain instructions asked for by the defendant, and to the judge's charge to the jury. These will be considered in their order.

[2] First. Was there error in the court's action in refusing evidence offered in mitigation of damages, covered by assignments of error Nos. 1 and 3? We think clearly not, for the reason that the proposed testimony did not relate to a cause of action existing in behalf of the defendant, at the time the plaintiff sustained his injury, but, on the contrary, to certain claimed equitable defenses, arising from defendant's treatment of and dealing with the plaintiff long subsequent to the time of injury, such as free house rent, furnishing supplies from its commissary, payment on account of wages, etc. These were not legal liabilities on the part of the defendant, if proved, and certainly should have been set up, by special plea, and not brought under the general issue of not guilty, in the damage suit to recover for personal injuries, if the same could be considered at all. Union Pac. Ry. Co. v. Reese, 56 Fed. 288–291, 292, 5 C. C. A. 510; Latimer v. Cotton Mills, 66 S. C. 135–138, 44 S. E. 559; Houston Belt & Terminal Co. v. Johansen (Tex. Civ. App.) 143 S. W. 1186; Id., 107 Tex. 336, 179 S. W. 853; 5 Ency. Pl. & Pr. 773; 17 C. J. 926.

[3] Moreover, the proposed testimony was not so preserved, by appropriate bill of exceptions, as to enable us to review the action of the District Court in its rulings in respect thereto. The record should have shown what the answers of the witnesses would have been to the inquiries in respect to the alleged mitigation of damages, the same taken, of course, in the absence of the jury and certified to this court, to the end that we might judge as to their relevancy and value as applicable to the merits of the controversy. Mercantile Tr. Co. v. Hensey, 205 U. S. 298–306, 27 Sup. Ct. 535, 51 L. Ed. 811, 10 Ann. Cas. 572; Shauer v. Alterton, 151 U. S. 607–616, 14 Sup. Ct. 442, 38 L. Ed. 286; Buckstaff v. Russell, 151 U. S. 626–636, 637, 14 Sup. Ct. 448, 38 L. Ed. 292; Sun Publishing Co. v. Lake Erie Asphalt Co., 157 Fed. 80–82, 84 C. C. A. 584; Koplan v. Boston Gaslight Co., 177 Mass. 25, 58 N. E. 183.

[4, 5] Second. The alleged error as to notice to defendant's representative Larson, in charge of the work, as to the defective spurs, assignment of error No. 2, is equally without merit. The assignment apparently proceeds upon the theory that, if the notice of the defect in the appliance was not given by the plaintiff, the same was inadmissible. Nothing could be further from the theory on which the evidence was introduced. It was to bring home to the plaintiff knowledge that the defect existed; from whom the information came was unimportant. The fact that a workman made complaint to the company's representative of the defective condition of the spur was notice to the company of the existing condition in which it was. Knaresborough v.

Belcher S. M. Co., Fed. Cas. No. 7,874; Northern Pacific R. R. Co. v. Lundberg, 176 Fed. 847, 100 C. C. A. 317; Baltimore & Ohio R. R. Co. v. McKenzie, 81 Va. 71–76; Chase v. Lowell, 151 Mass. 422, at page 426, 24 N. E. 212.

[6] Third. Did the court err in rejecting the defendant's prayers as a whole, and in giving its charge to the jury? It will be observed, upon examination of the proposed prayers, and the earnest arguments in support thereof, that the main contention was that no recovery could be had, because of the assumption of the risk by the plaintiff, and because the court did not in its charge cover this question. We are convinced, upon a careful review of the proposed prayers, that, while the abstract legal questions presented in some of them may be considered sound, still they should not have been given under the testimony introduced, and that the charge of the court, when considered in its entirety, and especially as to the defense of assumed risk, fully and properly passes upon that subject. The learned judge said:

"When he enters this employment of climbing trees to a height of 40 feet, he takes the ordinary risk depending upon that employment. He takes the ordinary risks of thick-barked trees and thin-barked trees, holes, etc. Those are incidental to his employment. There is compensation paid him, and in consideration of this compensation he takes those risks. He is expected to use those appliances according to proper and skillful methods. If he is required by those methods to drive his spurs in to a certain distance, he has to do it. He is not to handle them carelessly, by driving them into too small a distance to support its weight. He has to use them in a skillful and approved method.

"I charge you, however, that he has a right to assume, when those appliances are furnished, that they are in proper and good condition. When they are handed to him, he is not bound to subject them to any critical examination, to see whether they are or not. It may be prudent for him to do it, and he may take his life in his hands if he doesn't; but he has the right to act upon the presumption that the employer has furnished him with the proper kind of appliances.

"At the same time, I charge you that, if it was open and known to him that they were imperfect, charging him with the knowledge of the danger, if he knew that there was a dangerous imperfection, then he would be bound to take notice of it. The evidence is that they had been used for some time before that, and, in treating of employer and employee, you are to treat him as having common sense; and he is not to be charged with critical knowledge of what may be the results, always. If others had been using them, and his superior officer directed him to use them, and the question was between losing his employment and obeying orders, unless he was in a condition of mind in which he really knew that this defect was one which would imperil his life; if he did not, he would not be chargeable with negligence in obeying orders.

"At the same time, if such an examination as would be given by a man taking them to use for the purpose of ascending did disclose it to him, or should reasonably have disclosed it to him, the defect, so as to bring it to his mind and knowledge, of the great danger to his life by using them, then he would be chargeable with negligence."

In this court's opinion, the charge contains a most complete and comprehensive review of every legal question involved in the case, and presents the same with much force and clearness, and certainly as favorably to the defendant as it could have reasonably asked for.

The judgment of the District Court will be affirmed.